407 A.2d 1323

**Jeannie Marie GARRITY, Appellant,**

**v.**

**David Charles GARRITY.**

**David Charles GARRITY**

**v.**

**Jeannie Marie GARRITY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1978.

Decided July 27, 1979.

218

Joseph E. Sikorsky, Harrisburg, for appellant.

Joseph P. Mellody, Jr., Wilkes-Barre, for appellee.

Before PRICE, SPAETH and WATKINS, JJ.

PRICE, Judge:

This appeal arises from the order of the Luzerne County Court of Common Pleas in habeas corpus proceedings which were cross-actions between natural parents, granting custody of Jason Garrity [1] to his father, appellee herein. For the following reasons, we set aside that order and remand the case for the filing of a full opinion.

Jeannie Marie Garrity and David Charles Garrity, parties herein, were married on December 31, 1971. Jason was born of this union on August 31, 1972. In September of 1976, the couple separated with the father moving to Luzerne County and the mother retaining custody of the child and remaining in Harrisburg, Dauphin County. For approximately one year following the separation, Jason remained in the custody of his mother pursuant to an informal agreement between the parents. The father was allowed liberal visitation privileges. In August of 1977, the mother filed a request for support in Dauphin County. Subsequently, while Jason was visiting his father in accord with the agreement, the latter

---

1. At the time of the hearings, Jason was five and one-half (5½) years of age.

informed Jason's mother that he was not going to return Jason to her.

Both the mother and father then instituted habeas corpus actions seeking custody of the child, which actions were consolidated for hearing and decision by agreement of counsel. On January 24, 1978, the court below awarded custody to the father. This order has been appealed by the mother.

The scope of review by this court in a child custody case is of the broadest type. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977); *Commonwealth ex rel. Myers v. Myers*, 468 Pa. 134, 360 A.2d 587 (1976); *In re Custody of Neal*, 260 Pa.Super. 151, 393 A.2d 1057 (1978). While we will not usurp the fact-finding function of the trial court, we are not bound by deductions or inferences made by the hearing judge from the facts as found. *Trefsgar v. Trefsgar*, 261 Pa.Super. 1, 395 A.2d 273 (1978); *Commonwealth ex rel. Ulmer v. Ulmer*, 231 Pa.Super. 144, 331 A.2d 665 (1974); *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973). We need not accept a finding which has no competent evidence to support it, but are instead required to make an independent judgment based on the evidence and testimony, and make such order on the merits of the case as to do right and justice. *Trefsgar v. Trefsgar, supra* ; *Spells v. Spells*, 250 Pa.Super. 168, 378 A.2d 879 (1977). So as to facilitate this broad review, we have consistently emphasized that the hearing court must provide us not only with a complete record, *Augustine v. Augustine*, 228 Pa.Super. 312, 324 A.2d 477 (1974), but with a complete and comprehensive opinion which contains a thorough analysis of the record and specific reasons for the court's ultimate decision. *Martincheck v. Martincheck*, 262 Pa.Super. 346, 396 A.2d 788 (1979); *Tobias v. Tobias*, 248 Pa.Super. 168, 374 A.2d 1372 (1977); *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976); *Augustine v. Augustine, supra* ; *Commonwealth ex rel. Grillo v. Shuster, supra.* When the hearing judge fully complies with these requirements, his decision will not be reversed absent an abuse of discretion. *Carlisle Appeal*, 225 Pa.Super. 181, 310 A.2d 280

(1973). As we noted in *Ulmer*, a decision by this court, lacking the guidance provided by a thorough discussion in the trial court opinion, does violence to the rights of the parties to have their case weighed and decided by the trier of fact and assessor of credibility. *Commonwealth ex rel. Ulmer v. Ulmer, supra* 231 Pa.Super. at 147, 331 A.2d at 667. Moreover, such a course of action does not properly recognize the considerable interest maintained by the Commonwealth in the best interests and welfare of the child. We perceive just such a deficient analysis in the instant case.

█ It is fundamental that in all custody disputes, the best interests of the child must prevail; all other considerations are deemed subordinate to the child's physical, intellectual, moral, and spiritual well being. *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 296 A.2d 625 (1972); *Commonwealth ex rel. Holschuh v. Holland-Moritz*, 448 Pa. 437, 292 A.2d 380 (1972). Although the court below purported to employ this standard, it is difficult to perceive how it could have been applied in light of the sparse facts adduced and discussed.

In his opinion, the hearing judge stated as follows:
"From its study of the testimony in this habeas corpus dispute, *the hearing court concludes that there is greater stability with the father than with the mother, that the father's employment is more conducive to regular hours and scheduling than that of the mother,* that placing custody in the father will result in the child remaining within the jurisdiction of this court most of the time, that close relationship between the mother and son can be fostered through regular and lengthy visitation, that both visitation and custody are reviewable by the court for cause shown, that neither parent is unfit to have custody of their child, that in fact each parent has demonstrated tendencies which should be controlled for the well-being of the child (pornographic literature, for example), and for the above reasons the court concludes that custody of Jason Garrity should be awarded to his father David Charles Garrity and that regular and lengthy visitation

should be awarded to his mother, Jeannie Marie Garrity."
Opinion at 5–6 (emphasis added).

From these factors, it is apparent that an award of custody to the father could be premised only on the first two findings, that is, that there is greater stability with the father, and that his employment is more conducive to regular hours and scheduling. We have serious doubts as to both these conclusions.

■ With respect to the regular scheduling, the record discloses that prior to the couples' separation, appellant had indeed worked irregular hours as a waitress employed by the Host Inn at Harrisburg. As the court below noted in its findings of fact, this entailed work on the night shift from 5:00 p. m. to 2:00 a. m., with double shifts undertaken when necessitated by the father's continued unemployment. Subsequent to the separation, however, appellant has been placed on a 9:30 a. m. to 2:00 p. m. shift with the same employer. (N.T. 1).[2] Robert Williams, the beverage manager of the Host Inn and appellant's immediate supervisor, testified that she could continue on this schedule[3] indefinitely, with interruptions only when he required a "favor" and a waitress was necessary for the 5:00 p. m. to 10:00 p. m. dinner shift. (N.T. 34 *).

The hearing judge, however, does not remark on these subsequent, more regular hours in his opinion. By contrast, appellee, after considerable periods of unemployment, procured a position as a counterman for David Ertley, Inc., an automobile dealership in Kingston. (N.T. 44). His hours are approximately 7:45 a. m. to 4:45 p. m. (N.T. 67). The difference in work day hours is thus minimal, and while there existed the possibility that appellant would work on occasional evenings, it hardly seems appropriate to predicate the best interests of a child on such a possibility, particularly in light of the fact that appellant's normal schedule would

2. Testimony was taken on two days, December 15, 1977, and January 4, 1978. Testimony on the latter date is identified with an asterisk.

3. Mr. Williams testified that appellant's hours were 10:00 a. m. to 3:00 p. m. (N.T. 34 *).

allow her to be home when the child returns from school. In any event, while it is no doubt preferable to maximize the amount of parent-child contact, particularly in the initial formative years, a parent's efficacy in serving the best interest of the child is not necessarily directly proportional to the number of hours spent in his or her company. Little of this is discussed by the court below.

Second, while the father's home may in fact provide a more stable environment, there is a paucity of facts in the lower court opinion to support this conclusion. Financially, neither parent has a significant advantage over the other. Appellant earns approximately $150 per week, including tips, as a waitress. (N.T. 2). She has retained her position with the Host Inn for some ten and one-half years. As a counterman, the father's weekly gross is $135, with a net takehome of approximately $104 per week. (N.T. 44). At the time of the hearing, he had held his position for eleven months.

With respect to the physical size of the residences involved, there again appears to be little difference, although the court below neglects to mention this in its opinion. Appellant resides in Annville, in a two bedroom apartment that contains a living room and kitchen. (N.T. 9). The child would have his own bedroom and enjoy some four acres of land in the backyard. The father lives in a three room apartment (living room, kitchen, bedroom); he sleeps on the couch and the child uses a cot in the bedroom. (N.T. 68). He also testified that he was interested in acquiring a larger, two bedroom apartment to accommodate the child. (N.T. 66).

Finally, it is unclear that the father's home would be emotionally more stable. The hearing judge concedes that both parents have demonstrated love and affection for their son, as well as traits detrimental to the child's development. The court makes specific reference to both having a tendency to indulge in pornographic literature. At the hearing, both parties admitted smoking marijuana (N.T. 6, 51), although each maintained that they no longer used the drug.

Several friends of appellant testified that while the child was in the custody of the mother, he appeared healthy and clean (N.T. 29, 34), and that she maintained a good environment for him. With respect to this testimony, the court, without explanation or specifics, noted solely that as to disputed facts, particularly the living conditions of appellant, the testimony presented by the father's witness was more credible. Indeed, the court appeared to base its finding of parental stability exclusively on the testimony of James Movinsky, appellant's brother-in-law, who testified that he had visited the parties' apartment several times prior to the separation, and the mother's apartment some ten times subsequently. He had also seen the child at the father's apartment. Mr. Movinsky testified that while the couple was married, appellant would get "high" in front of the child, with the result that Jason would become frightened. Following the separation, he testified that appellant's apartment "wasn't the best" (N.T. 24 *), and that Jason was not dressed neatly. He also noted that Jason often cried and became emotionally upset when he had to return to appellant's apartment following a visit with his father. Since Jason had been living with his father, Mr. Movinsky observed that he was neatly dressed, bathed, and had experienced a general improvement in his mannerism. (N.T. 36 *).

The child himself stated that he loved both his parents, but that he preferred to live with his father. (N.T. 52 *). He particularly noted that he did not like being with his mother when she spanked him "[f]or being bad." (N.T. 54 *). He also stated that he had not observed his mother smoke marijuana in his presence.

It would be unproductive to detail further aspects of the testimony or law [4] which the court below failed to address.

---

4. We note that the court below, citing *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 296 A.2d 625 (1972), stated that the tender age of Jason, while a fact to be considered, is no *ipso facto* determinative of custody. Our supreme court has expressly disapproved of the tender years doctrine as a "makeshift where the scales are relatively balanced; . . . ." *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 300, 368 A.2d 635, 639 (1977). In custody cases, the court

The opinion is devoid of the type of detailed analysis as to credibility which is essential before we may render a considered opinion on appeal. The trial judge is indeed in a superior position to evaluate the attitude and sincerity of the witnesses, *Jones v. Kniess,* 249 Pa.Super. 134, 375 A.2d 795 (1977), but such an advantage is cast away if no mention is made of precisely what testimony was credible. It is insufficient to merely choose certain findings and hold that they evidence a stable homelife. Absent the grounds for selecting the particular findings and the reasoning process employed to reach the ultimate conclusion, this court cannot pass on the fate of a child.

The record is remanded for the entry of a full, detailed opinion. Although new hearings are not required, we recognize that the hearings here involved were held on December 15, 1977, and January 4, 1978. In view of the trial judge's recognition (Opinion at 6) of the possibility of unresolved problems, and the probability of a future court solution to those problems, the trial judge may, in his discretion, hold a new hearing to provide a fresh, current view to aid in determining what may be in the best interest of this child.

may no longer simplify the complex factual variables by resorting to sweeping presumptions, but must diligently inquire into all pertinent evidence.