422 A.2d 159

**COMMONWEALTH of Pennsylvania ex rel. LETTIE H. W.**

v.

**PAUL T. W.**

**Appeal of LETTIE H. W.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1979.

Filed Oct. 3, 1980.

264

John W. Murtagh, Jr., Pittsburgh, for appellant.

Gerald E. Crowley, Ellwood City, for appellee.

Before PRICE, HESTER and CAVANAUGH, JJ.

PRICE, Judge:

This appeal arises from the order of the court of common pleas awarding permanent custody of the parties' two daughters, aged three and nine years, to appellee, the natural father, and awarding partial custody and visitation to appellant, their natural mother. For the following reasons, we set aside that order and remand the case for further proceedings.

The parties herein were married in 1965, and their two daughters were born of this union. They lived together without separation until July 6, 1978, when appellee re-

moved the furnishings and personal property from the parties' marital residence in White Township, Beaver County, to the home of one Frances Orzechowski in Beaver Falls, Beaver County. He also took his two daughters to live with Ms. Orzechowski, while he took up residence in Ellport, Lawrence County. These changes were accomplished without appellant's knowledge and while she was away for the day shopping with Ms. Orzechowski. Appellant had been told by appellee that he had arranged for the children to spend a two week vacation, beginning July 6, at his sister's home and that he was going away the next day, July 7, for a job interview in California. On July 7, when appellant returned home from shopping, she found the apartment vacant and a note telling her to contact a neighbor who would explain.

Appellant stayed with a neighbor until appellee called on July 10 to inform her that he was divorcing her and that he would not permit her to see the children. She then moved into the home of her sister and brother–in–law in Ridgewood, New Jersey and attended school to become an executive secretary.

■■■ Appellate review of child custody cases is of the broadest type, and thus, in carrying forth our duty, we are not bound by the inferences and deductions of the hearing court made from the facts it found. *Bender v. Bender,* 261 Pa.Super. 12, 395 A.2d 279 (1978); *In re Custody of Neal,* 260 Pa.Super. 151, 393 A.2d 1057 (1978). While we will not usurp the fact–finding function of the hearing court, we will undertake an independent examination of the evidence, and we need not accept a finding that has no competent evidence to support it. *Spells v. Spells,* 250 Pa.Super. 168, 378 A.2d 879 (1977); *Tomlinson v. Tomlinson,* 248 Pa.Super. 196, 374 A.2d 1386 (1977). To facilitate this broad review, we have consistently emphasized the necessity of the hearing judge providing us with a complete record and a comprehensive opinion advancing an explanation of the reasons underlying the custody decision. *In re Custody of White,* 270 Pa.Super. 165, 411 A.2d 231 (1979); *Martincheck v. Martincheck,* 262

Pa.Super. 346, 396 A.2d 788 (1979). When the hearing judge complies with these requirements, his decision will not be reversed absent an abuse of discretion since he is in a superior position to evaluate the attitudes and demeanor of the witnesses. *Jones v. Kniess,* 249 Pa.Super. 134, 375 A.2d 795 (1977); *Commonwealth ex rel. Cutler v. Cutler,* 246 Pa.Super. 82, 369 A.2d 821 (1977).

■ In a child custody contest between parents, we must focus our attention exclusively on the best interests of the child and subordinate all other considerations to our concern for the physical, intellectual, moral and spiritual well–being of the child. *Spells v. Spells, supra; In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977). Although in the instant case the trial judge purported to apply this standard, it is also apparent that he improperly employed another factor in reaching the determination that custody should be awarded to appellee. The judge stated that, "The Court is keenly aware of the fact that to grant custody to the Petitioner would remove the girls from the jurisdiction of this Court . . . . " (Slip Opinion at 4) and he later advanced the court's continuing ability to review and consider any change in circumstances necessitating a modification of the order as a reason supporting the award to appellee.

■ This rule of preference to a resident guardian over a non–resident guardian has been denounced for importing a dubious consideration into the custody determination:

"The [rule] was obviously more tenable in the days of a less mobile society. In today's accessible and communicative world the validity of this proposition is open to serious question. It would be presumptive [sic: presumptuous] to believe that the care and concern of the Pennsylvania Courts for the best interest and the welfare of a child is not shared by our sister States." *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 299, 368 A.2d 635, 639 (1977).

*In re Custody of Hernandez, supra*, 249 Pa.Super. at 302, 376 A.2d at 662; *see Garrity v. Garrity*, 268 Pa.Super. 217, 407 A.2d 1323 (1979). This court in *In re Custody of Hernandez, supra*, suggested that even when this factor is merely given "some weight" and does not control the outcome, it is improperly used. Thus, in the context of the instant opinion in which the hearing judge stated he was "keenly aware" of the circumstance of retaining jurisdiction, indicating that this consideration was used as more than a makeweight argument, we must certainly remand to enable the hearing judge to reconsider his decision.

The hearing judge grounded the award of custody to appellee upon two conclusions; namely, appellant created a home atmosphere of "tension, unhappiness, and overly stringent discipline with very little outward affection" when appellee was not present to exert an influence (Slip Opinion at 4), and appellant could offer the children only a very limited amount of time over at least the next ten months. We find a paucity of facts to support these conclusions, leaving us with serious doubt as to their validity.

The following facts regarding the issue of the stringency of discipline employed by appellant were revealed at the hearing. Appellee testified that he removed his daughters from the marital home out of concern for their physical and emotional well–being. Appellant's manner of disciplining the children was of particular concern. He testified that she would send them to their room for long hours, sometimes without their meals, to leave her free to talk to him or to do crocheting; and she in anger had struck the three–year–old knocking her to the back of the car and that he had on other occasions found bruises on this child; and that she pulled the older girl's hair to discipline her.

Appellant admitted that she disciplined the children to teach them and correct their behavior. She explained that, since her youngest daughter was not old enough to understand, she would spank her, sometimes with a ruler or bath brush because she suffered from bursitis in her arm and could not effectively administer a spanking with her hand

alone. She also would discipline both daughters by taking away privileges, for example, not permitting them to go outside and play.

Although the court explicitly credited appellee's description of the events, we are given no explanation for this conclusion. The examination of this witness revealed that he was not present during many of the alleged instances of abuse and could not testify as to their occurrence. The corroborating witnesses, Ms. Orzechowski and her sister, Deborah Soos, both had a substantial interest in helping the father maintain custody. Appellee pays Ms. Orzechowski $300 income per month to feed, shelter and care for his daughters, without which she would have to seek other employment, and Deborah, as a part of that household, benefits from this income as well. Both also received the use of furnishings from the parties' marital home. While we have the cold record before us, we are bereft of guidance from the hearing judge on the reasoning process he employed to reach the conclusion that appellee's version of the disciplinary methods employed is the more credible testimony.

Furthermore, this is the only mention of credibility made throughout the opinion of the hearing judge, and we lack any evaluation of the witnesses' credibility on other matters. The aforementioned advantage in weighing credibility which is possessed by the hearing judge by virtue of his opportunity to observe the witnesses, is completely squandered when he fails to articulate his findings on credibility. Since we lack this type of probing analysis of the testimony, which we deem essential before we can render a considered conclusion on this appeal, we must also remand this case to rectify this deficiency. *See In re Custody of White, supra; Garrity v. Garrity, supra.*

Moreover, appellee testified that appellant's attitude had quickly and suddenly changed within the seven months prior to his leaving and that she had not been cruel to the children before then. Ms. Orzechowski testified that appellant frequently left the children with her because she would become

nervous and spoke of the possibility of being placed in the hospital again for a breakdown. Yet, we note a total lack of disinterested testimony on the subject. The lack of such testimony only serves to aggravate the other deficiencies of this record. *See Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976).

As for the hearing judge's second conclusion concerning the limited amount of time appellant would have in the near future to spend with her daughters, we find this not only unsupported but, indeed, contradicted by the record. From the fact that appellant would for the next nine months be spending six hours a day, five days a week, in class to learn secretarial skills, the hearing judge concluded that she would be away from home for "most of each school day" and that subsequently she would have to devote "a considerable portion of her time" to seeking employment and getting established in a new job. (Slip Opinion at 3). Not a scintilla of evidence was adduced concerning the time that appellant would have to spend looking for a job or her plans for arranging her schedule. Although she would be in class for six hours a day, the hearing judge did not address the fact that these would be hours that the elder daughter would also be spending at school. The judge also failed to realize that the younger daughter would be placed in a day care center at appellant's school and, thus, would be traveling to and from school with appellant.[1] This court has shown its realization that it is often necessary for parents to work and that this circumstance should not necessarily act to deprive a parent of custody when adequate arrangements have been made for the child's care during the parent's absence. *Commonwealth ex rel. Holschuh v. Holland–Moritz*, 448 Pa. 437, 292 A.2d 380 (1972); *Hooks v. Ellerbe*, 257 Pa.Super. 219, 390 A.2d 791 (1978).

The hearing judge entirely neglected to examine the amount of time appellee would have available to visit with

1. The judge incorrectly found that the younger daughter would be enrolled at a day care center at the school attended by the elder daughter. (Slip Opinion at 3).

his daughters. His testimony established that he was working eight hours a day and on varying shifts at a steel mill. At the time of the hearing on September 1, 1978, the elder daughter had been on summer vacation and when he worked on the midnight until 8:00 a. m. shift, he could spend a good portion of the day with both daughters. Ms. Orzechowski testified, however, that since the parties had separated he had, for the most part, been on the 4:00 p. m. until midnight shift, which would leave him very little time to see his elder daughter when she is attending school. The hearing judge failed to comment on these irregular work hours. In addition, at the time of the hearing appellee was living a good distance away from Ms. Orzechowski's residence where his daughters were staying, and even if all went as planned and he moved to an apartment located at the back of the property on which the children lived, he would not be living in the same house with them. They would not have the benefit of the constant presence and supervision of a live–in parent and the security such an arrangement would provide. The hearing judge failed to address the effect this might have on the children and chose instead to critically examine only the home environment offered by the mother.

■ Given this state of the record, which indicates that the hearing judge failed to consider exclusively the best interests of the children and neglected to render a clear and complete opinion, we cannot justly exercise our power to make an independent judgment and enter an order on the merits. We remark that the final hearing on this case occurred on September 1, 1978, over two years ago. In light of the multiplicity of factors influencing a custody decision and the changing nature and influence of these factors, justice demands a current re–evaluation of the situation to aid in determining the best interests of these children. We, therefore, remand for further proceedings as well as for the entry of a full, detailed opinion, after which the aggrieved may file a new appeal.

CAVANAUGH, J., concurs in the result.