425 A.2d 1132

**In re DONNA W. and Edward W., Minors.**

**Appeal of MARILYN W., Mother of the minor children.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1980.

Filed Feb. 6, 1981.

Eileen D. Yacknin, Pittsburgh, for appellant.

Howard B. Elbling, Pittsburgh, for appellees.

James A. Esler, Assistant County Solicitor, Pittsburgh, for participating party.

Before PRICE, CAVANAUGH and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal involves the custody of two children formerly adjudicated dependent and placed in foster care by the court below. Appellant (the children's natural mother) contends that the lower court improperly denied her petition for the return of the children to her custody. Because we conclude that the court overemphasized certain evidence and failed to consider sufficiently other relevant factors, we vacate its order and remand for proceedings consistent with this opinion.

The subjects of these proceedings are Donna, born October 8, 1976 and Edward, born November 9, 1977. The events leading up to their being adjudicated dependent and placed in foster care are as follows. In April, 1977, appellant requested Children and Youth Services of Allegheny County (CYS) to provide immediate temporary foster care for Donna. Appellant, then age 17, sought this assistance because she was having serious marital problems and was suffering from a nervous condition associated with her pregnancy with Edward.[1] CYS provided foster care for several weeks and then returned Donna at appellant's request. CYS be-

---

[1] Appellant was unwilling to entrust Donna to the care of her parents, having herself been sexually abused by her father over a prolonged period when she had lived with them.

came involved with the family again in June, 1977, following renewed marital problems in appellant's household. Over the next several months CYS attempted to work with the family and arranged for their participation in a parenting program. During this period Edward was born, and he too was included in the program. Despite the assistance of CYS, the family's problems worsened. Appellant and her husband separated, and the husband was later arrested for automobile theft. Appellant soon found herself without suitable housing for herself and the children. Consequently, on March 30, 1978, appellant once again contacted CYS to request that her children be placed in temporary foster care. CYS arranged for such care immediately and then proceeded to file a dependency petition in the court below. On May 23, 1978, after a hearing the court adjudicated Donna and Edward dependent and ordered CYS to assume custody with authorization to place the children in foster care. Appellant did not appeal this order.

On June 19, 1979, appellant petitioned the court to review its earlier order and establish a plan for returning the children to her. At the initial hearing on the petition, in July, 1979, appellant established that she had made arrangements to obtain suitable public housing for herself and the children. She also informed the court that she had been divorced from her former husband for approximately one year. Ellen Amshell, a psychotherapist at the Southeastern Mental Health Clinic, testified that she had been counseling appellant regularly since January, 1979. Ms. Amshell stated that appellant had made substantial progress in developing a responsible outlook and in stabilizing her life, and she recommended the immediate return of the children with continued counseling and weekly in-home social services support. The lower court, however, was unwilling to return the children without evidence of appellant's parenting capabilities and before appellant had finalized her housing arrangements. Accordingly, the court continued the matter and ordered CYS to increase the mother's visitations with the children under the supervision of Ms. Amshell. After several delays

in reconvening the hearing, the court received evidence again on December 12, 1979. At that hearing, CYS caseworker Janice Kowaleski testified that appellant had obtained suitable housing and needed only a few items of furniture to accommodate both children properly. Upon receiving the recommendation of CYS that arrangements be made to return the children, the court ordered that Edward be gradually reintroduced to appellant's custody over a period of six weeks. Assuming, after a further period of supervision and observation, that mother and son had adjusted well to the new arrangement, Donna would then be returned to appellant.[2]

The return plans proceeded smoothly until the final hearing on January 30, 1980. At that hearing the court learned that appellant had been raped earlier that month. Caseworker Kowaleski testified that appellant had initially told her that she did not know the identity of the person who had raped her. One week later, however, appellant revealed to Ms. Kowaleski that her assailant was a sixteen-year-old acquaintance whom she had met in a restaurant and invited home one evening. On their way home appellant had purchased some beer, and although she admitted drinking some, she adamantly denied that her young assailant had consumed any while they had been together. Neither of appellant's children had been at her home at the time of the rape. On the basis of this incident, CYS reversed its prior position favoring returning the children to appellant and recommended that appellant undergo psychological testing. Ms. Amshell differed sharply with caseworker Kowaleski, however, and recommended that the return plan continue as before. She testified that she believed appellant to be emotionally stable and no longer in need of continued counseling. She emphasized the enormous improvement which

2. The court believed that Edward should be reintroduced first because he would have a more difficult time adjusting to living with appellant. Moreover, the court thought it preferable to test appellant's capacity to care for her children by returning them one at a time. It should be noted that Edward and Donna apparently have been living in separate foster homes throughout their separation from appellant.

appellant had made during counseling and testified that appellant had related well to her children during the visits which she had observed. She expressly stated her belief that appellant was stable enough to provide for the children, notwithstanding her having invited a sixteen-year-old boy to her home and drinking with him. The court heard additional testimony from appellant, who stated that she had withheld the identity of her assailant originally because she did not want her boyfriend to find out. She later told caseworker Kowaleski the full story, she explained, because her boyfriend had learned the facts surrounding the incident. The court heard testimony also from appellant's boyfriend, who stated that he and appellant had a serious relationship, although his career plans appeared somewhat unsettled.[3] At the conclusion of the hearing the lower court ordered that the children remain in foster care pending further review "at some later time." This appeal followed.

Before addressing the merits of this appeal, we need consider briefly the standard by which the custody question presented should be judged. Both the Juvenile Act[4] and our cases mandate that a child adjudicated "dependent" may not be separated from his parents unless such separation is clearly necessary. 42 Pa.C.S.A. § 6301(b)(3); *In the Interest of S.M.S.*, 284 Pa.Super. 9, 424 A.2d 1365 (1981); *In the Interest of Pernishek*, 268 Pa.Super. 447, 408 A.2d 872 (1979); *In the Interest of Whittle*, 263 Pa.Super. 312, 397 A.2d 1225 (1979); *In the Interest of LaRue*, 244 Pa.Super. 218, 366 A.2d 1271 (1976) (plurality opinion). The "clear necessity" standard is designed to ensure that family unity is preserved "whenever possible." 42 Pa.C.S.A. § 6301(b)(1) and (3).

However, once the child has been taken from the parents, the court will appraise the evidence, and award custody,

3. The boyfriend testified somewhat contradictorily that he was seeking admission to law school, but that he had attended undergraduate school for only one year and had not received a degree.

4. Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended, 42 Pa.C.S.A. § 6301 et seq.

according to the child's *best interests*. In applying this standard the court will recognize the natural parents' claim to custody. In a given case this claim may prove of decisive weight; the particular circumstances of each case, including such facts as the length of time the child has been separated from the parents, must be taken into account.

*Stapleton v. Dauphin County Child Care Service*, 228 Pa.Super. 371, 391, 324 A.2d 562, 572 (1974) (emphasis added).

■ As we noted in *Stapleton, supra,* "the natural parents' claim to custody" is a significant, and sometimes decisive factor in custody disputes such as this one. Indeed, our cases have long recognized "that depriving a parent of [his or] her child is one of the most serious interferences that the state can impose on an individual." *Milligan v. Davison*, 244 Pa.Super. 255, 261, 367 A.2d 299, 302 (1976). *See also In re William L.*, 477 Pa. 322, 383 A.2d 1228 (1978); *Commonwealth ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 66 A.2d 300 (1949); *In the Interest of LaRue, supra; Rinker Appeal*, 180 Pa.Super. 143, 117 A.2d 780 (1955). Moreover, in a slightly different context, our courts have acknowledged the importance of natural parents' claims to custody by requiring third parties seeking custody to meet a substantial evidentiary burden. Accordingly,

"[w]hen the judge is hearing a dispute between the parents, or a parent, and a third party, . . . [t]he question still is, what is in the child's best interest? However, the parties do not start out even; the parents have a 'prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parents' side. What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side."

*Ellerbe v. Hooks,* 490 Pa. 363, 367–68, 416 A.2d 512, 513–14 (1980) (quoting *In re Custody of Hernandez,* 249 Pa.Super. 274, 286, 376 A.2d 648, 654 (1977)). *See also Commonwealth ex rel. Patricia L. F. v. Malbert J. F.,* 278 Pa.Super. 343, 420 A.2d 572 (1980). In adopting this standard, our Supreme Court has pertinently noted that

> deference to the parental relationship is not an archaic adherence to any property rights theory of the family. . . .
> Our determination today is only an appropriate recognition that the blood relationship of parenthood has traditionally served and continues to serve as our society's fundamental criterion for allocating control over and responsibility for our children, and that without some showing of harm, the courts should not interfere with that arrangement.

*Ellerbe v. Hooks, supra,* 490 Pa. at 369, 416 A.2d at 514–15.

■ Notwithstanding the acknowledged importance of the parental interest in custody, application of the "best interests" standard requires the court to consider other factors in making its determination. Our Supreme Court has stressed this fact in custody disputes between parents and third parties, and its observations in that context are equally relevant here. In *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157 (1980), the Court stated that

> the *Hernandez* standard, adopted by this Court in *Ellerbe,* was intended to emphasize the importance of the maintenance of the parental relationship, yet at the same time permit the hearing court to award custody to the third party where the best interests of the child will be clearly served by such a decision. This point is best demonstrated by the fact that this Court in *Ellerbe,* after embracing the *Hernandez* standard, applied it and sustained the decision of the hearing court awarding custody to the maternal grandmother. *Ellerbe v. Hooks, supra.*
>
> . . . . .
>
> . . . Restated, the standard in this area is not to be construed as precluding a custody award to a non-parent, absent a demonstration of the parent's dereliction. We

again emphasize that the standard seeks only to stress the importance of parenthood as a factor in determining the best interests of the child.  However, other factors which have significant impact on the well being of the child can justify a finding in favor of the non-parent, even though the parent has not been shown to have been unfit.

*Id.* 491 Pa. at 328, 421 A.2d at 160–61 (footnote omitted). *See also Ellerbe v. Hooks, supra,* 490 Pa. at 368, 416 A.2d at 514 ("No doubt in some instances the best interests of the child are served by awarding custody to a non-parent."). Factors of importance in determining the best interests of a child in any custody dispute include, *inter alia*: (1) "the length of time the child has been separated from the parents," *Stapleton, supra,* 228 Pa.Super. at 391, 324 A.2d at 573; (2) "[t]he adverse effect upon the development of youngsters caused by the disruption of an established stable relationship," *Albright, supra,* 491 Pa. at 328, 421 A.2d at 160; (3) the desirability of raising siblings together "whenever possible," *id.*; and (4) the fitness of the party or parties seeking custody, *see, e. g., Commonwealth ex rel. Leighann A. v. Leon A.,* 280 Pa.Super. 249, 421 A.2d 706 (1980). *See generally* A. Momjian & N. Perlberger, *Pennsylvania Family Law,* §§ 5.1, 5.3 (1978).  The latter consideration is, of course, especially important when a parent is seeking the return of a dependent child, since in many cases the original finding of dependency and removal of the child resulted from the parent's past unfitness to retain custody.

■  In the present case the decision of the lower court not to return Donna and Edward to appellant reflects both an overemphasis of evidence minimally related to the appellant's fitness as a custodian and a failure to consider sufficiently other relevant factors, including appellant's parental interest in regaining custody and the effect on the children of removal from their foster homes.  The opinion of the court reveals that it based its decision almost entirely on its conclusion that appellant evidenced an "unstable approach to life with poor judgment" which suggested "that the children would very likely continue to suffer deprivation

upon their return." Opinion of the lower court at 3–4. The court went on to state and support its conclusion as follows:

[Appellant's] relationships with men have been at best chaotic. Her father is alleged to have sexually molested her, her husband beat her and mistreated her, and now she alleges rape by a sixteen year old friend. The record also speaks of paramours and men whom she hoped to marry, and the most recent, an acquaintance of two months promises to marry her when he completes law school.

[Appellant] has no life plan, no goal toward stability, and it is feared that her children are only a secondary concern to that of making some kind of connection with a male regardless of what would be good for her or the children.

*Id.*

■ We have often noted in custody matters that " 'while we cannot nullify the fact-finding function of the hearing judge, we are not bound by a finding which has no competent evidence to support it.' " *Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Super. 229, 237, 312 A.2d 58, 63 (1973) (quoting *Commonwealth ex rel. Gifford v. Miller,* 213 Pa.Super. 269, 273–74, 248 A.2d 63, 66 (1968)). "Further we are not bound by inferences or deductions made by the hearing judge from the facts found." *In re Custody of Hernandez, supra,* 249 Pa.Super. at 290, 376 A.2d at 656. The lower court's conclusions that appellant lacks a "life plan" and "goal toward stability" and is more concerned with "making some kind of connection with a male" than with her children's welfare lack support in the record before us. To the contrary, the evidence presented at the hearings on appellant's petition reveals a woman who had made great strides in developing the emotional and physical resources to be a fit custodian. Ms. Amshell, appellant's psychotherapist since January, 1979, adhered to this appraisal throughout the proceedings, even after appellant's unfortunate incident with the sixteen-year-old youth. Both CYS and the lower court seemed to concur in this appraisal until the final

hearing. We regard as highly speculative the lower court's suggestion that appellant's abuse at the hands of her father, her ex-husband, and the youth was somehow her fault and reflected adversely on her fitness as a custodian. Moreover, even if appellant's sexual relations with the sixteen-year-old youth had been consensual (and nowhere does the evidence suggest that they were), the incident would be of little consequence to the custody determination since it had no effect whatsoever on the children, who were in foster care at the time. The law clearly recognizes that the only relevance of a nonmarital relationship in a custody decision is the effect of that relationship on the child. "If the evidence shows that a parent's conduct has had harmful effects on the child the court may be justified in denying custody to that parent. On the other hand, if the evidence shows that the parent's conduct has not adversely affected the child, then the best interests of the child may dictate that the parent retain custody." *Commonwealth ex rel. Myers v. Myers*, 468 Pa. 134, 141, 360 A.2d 587, 590 (1976). *Accord, Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976).

The only conclusion that the lower court properly could draw from the incident involving appellant and the youth is that appellant showed poor judgment in bringing the youth home with her and drinking beer in his presence. We cannot, however, infer from this one instance of poor judgment that the deprivation which resulted in the children's removal from appellant's custody would "very likely continue." To do so is to ignore the substantial progress which, up until January 30, 1980, all interested parties and the court acknowledged that appellant had made. Accordingly, we must vacate the order of the lower court and remand the case in order for the court to reconsider appellant's fitness as a custodian in light of both the evidence already presented and present circumstances as revealed through additional testimony.

We must remand this case for the additional reason that the lower court did not sufficiently consider several factors

which are of special relevance. As we noted earlier, appellant's status as the mother of Donna and Edward is a substantial factor in favor of restoring custody to her. The lower court, however, seemed to attribute little weight to this factor, and concluded simply and unwarrantedly that appellant's interest in being a parent was secondary to her interest in pursuing relationships with men. Additionally, although the court concluded that the evidence "mitigates [sic] against removal of the two children from a stable, healthy environment which they have known for two years," Opinion of the lower court at 3, the record in fact is totally devoid of any evidence regarding the nature and quality of the children's foster placements, the degree of attachments which the children have formed in foster care, and the effect which return of the children would have on them. Such evidence should come from both interested and disinterested witnesses. *J. F. G. v. K. A. G.*, 278 Pa.Super. 25, 419 A.2d 1337 (1980); *In the Interest of Pernishek, supra; Lewis v. Lewis*, 267 Pa.Super. 235, 406 A.2d 781 (1979). While it is likely that removal of the children would disrupt some attachments which they have made during their two-and-one-half years in foster placement, *Albright, supra*, such disruption does not necessarily preclude their return to their mother. *See, e. g., Palmer v. Tokarek*, 279 Pa.Super. 458, 421 A.2d 289 (1980) (upholding lower court's grant of custody to natural father despite fact that child had been living with maternal grandparents for seven of his eight years). Indeed, the Juvenile Act specifically mandates that any transfer of legal custody of a dependent child is "temporary." 42 Pa.C.S.A. § 6351(a)(2).[5]

Because of the errors described above we must vacate the order of the lower court and remand for a reconsideration of appellant's petition for the return of her children. In addi-

5. Moreover, as previously noted, the children apparently have been living in separate foster homes. Thus, return of the children to appellant would serve the policy of keeping siblings together whenever possible, *Albright, supra*, 491 Pa. at 328, 421 A.2d at 160, a factor which the lower court should take into consideration on remand.

tion to considering the evidence already presented in light of this opinion, the lower court shall direct the parties to present additional evidence to reflect circumstances as they presently exist. In making its decision the court shall consider, among other relevant factors, how appellant's parental interest and the children's present attachments bear on the question of custody. To minimize further delay in settling the fate of these children, the proceedings on remand should take place "with utmost dispatch." *In the Interest of LaRue, supra,* 244 Pa.Super. at 235, 366 A.2d at 1280. The lower court is directed to make every effort to render its final decision within ninety days of our order of remand. Any party aggrieved by the court's ultimate decision may file a new appeal with this Court, in which case the lower court shall file a comprehensive opinion which thoroughly analyzes the evidence, weighs the relevant factors, and states the reasons for its decision.

Order vacated and case remanded for proceedings consistent with this opinion.

PRICE, J., dissents.