450 A.2d 1003

**In re DESIREE B., a minor.**

**Appeal of CONCETTA B., natural mother.**

**Children and Youth Services of Allegheny County
(Participating Party).**

**Eloise Freeman, foster mother (Participating Party).**

Superior Court of Pennsylvania.

Argued April 13, 1982.

Filed Aug. 27, 1982.

Linda C. Liechty, Pittsburgh, for appellant.

William F. Giarla, Pittsburgh, for Freeman, participating party.

Before HESTER, JOHNSON and POPOVICH, JJ.

JOHNSON, Judge:

The order appealed from denied the petition by a natural mother [Concetta] for the return to her of her daughter [Desiree], and ordered that Desiree remain in the custody of her foster-mother [Mrs. Freeman].

The facts of this case are as follows. Desiree was born to Concetta, who is not married, on December 25, 1977. In early April 1978 Desiree was admitted to a hospital where her condition was diagnosed as failure to thrive. She was subsequently returned to Concetta for a short while under the supervision of the Allegheny County Children and Youth Services [CYS]. But CYS later petitioned the court to adjudicate Desiree dependent[1] and to remove her from Concetta's custody because Concetta's housing was unfit and Concetta was not cooperating with CYS. Ultimately, in November 1978, the lower court adjudicated Desiree dependent and ordered her to remain in the foster home where she had been intermittently since the hospitalization, and where

1. *See* the Juvenile Act, Act of July 9, 1976, P.L. 586, No. 142, § 2, effective June 27, 1978. 42 Pa.C.S.A. § 6301 et seq. (Purdon 1982).

she has been ever since. The court concluded the November 1978 hearing with remarks which seem to indicate that it envisioned Desiree's placement in the foster home as long-term.

Nearly two years later, in October 1980, there was another hearing. CYS expressed the view that, although Concetta was managing very well with her second child, a son, now a few months old, and that she had improved greatly since the removal of Desiree, returning Desiree to Concetta might "add stress to a high risk situation." By this time Desiree had been with Mrs. Freeman for two years and three months. The court expressed its concern that Desiree would become psychologically attached to Mrs. Freeman such that removal could be harmful to Desiree. Desiree at this time was seeing her natural mother once a month. The court decided however that Desiree should remain with Mrs. Freeman for a further few months. Further disposition would depend on (1) whether Concetta could be shown to be able to meet Desiree's needs and (2) the extent to which it would be damaging to Desiree to be moved out of the Freeman home.

Then in 1981, after two hearings, in February and April, the court decided that because Mrs. Freeman had become Desiree's psychological mother, it would be damaging to Desiree to remove her, and therefore denied Concetta's petition to have her daughter returned to her, despite testimony as to much improvement in Concetta's mothering and housekeeping skills and to the fact that her second child is flourishing under her care.

In custody cases the scope of our review is very broad. *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977); *Commonwealth ex rel. Oxenreider v. Oxenreider,* 290 Pa.Super. 63, 434 A.2d 130 (1981). We do not usurp the fact-finding function of the trial court, but we are not bound by the deductions or inferences made by the trial judge from the facts he has found. We need not accept a finding which has no competent evidence to support it, but are instead required to make an independent judgment based on the evidence and testimony, and make such order

on the merits of the case as to do right and justice. *See Garrity v. Garrity,* 268 Pa.Super. 217, 407 A.2d 1323 (1979), and cases cited therein. So as to facilitate this broad review, we consistently emphasize that the hearing court must provide us with a complete record and a comprehensive opinion which contains a thorough analysis of the record and specific reasons for the court's ultimate decision. *Garrity v. Garrity, supra.*

The evidence on which the lower court relied for its decision was in part the testimony of a child development specialist who had participated in an evaluation of the quality and intensity of the relationship between Desiree and Mrs. Freeman, and also the reports made to the court by a psychiatrist and a child therapist who had examined, respectively, Desiree and Mrs. Freeman and Desiree and Concetta. The child therapist who testified was particularly opposed to separating Desiree from Mrs. Freeman.

The standard which the lower court used to reach its decision was whether the best interests of the child would be served by the award of custody to her natural mother.[2] However, the court below did not consider the initial step of the standard which is to be applied in cases where the dispute is between natural parents and third parties. In *In re Donna W.,* 284 Pa.Super. 338, 425 A.2d 1132 (1981), a case in which a natural mother was petitioning for the return to her custody of her two children who had been adjudicated dependent, this court showed how and why the test is different in this type of dispute. Quoting from *Stapleton v. Dauphin County Child Care Service,* 228 Pa.Super. 371, 391, 324 A.2d 562, 572 (1974), and also from other cases, *q.v.,* this court explained that the fact that one of the disputants is the natural parent must be considered by the court as a weighty, though not controlling, factor:

> [O]nce the child has been taken from the parents, the court will appraise the evidence, and award custody, according to the child's *best interests.* In applying this

---

**2.** *In re Desiree B.,* No. 1198–78, slip op. at 4 (C. P. Allegheny County, Family Division, Juvenile Section, filed October 29, 1981).

standard the court will recognize the natural parents' claim to custody. In a given case this claim may prove of decisive weight; the particular circumstances of each case, including such facts as the length of time the child has been separated from the parents, must be taken into account . . .

As we have noted . . . "the natural parents' claim to custody" is a significant, and sometimes decisive factor in custody disputes such as this one. Indeed, our cases have long recognized "that depriving a parent of [his or] her child is one of the most serious interferences that the state can impose on an individual." . . . Moreover, in a slightly different context, our courts have acknowledged the importance of natural parents' claims to custody by requiring third parties seeking custody to meet a substantial evidentiary burden. Accordingly, "[w]hen the judge is hearing a dispute between the parents, or a parent, and a third party, . . . [t]he question still is, what is in the child's best interest? However, the parties do not start out even; the parents have a 'prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parents' side. What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side." *Ellerbe v. Hooks* 490 Pa. 363, 367–68, 416 A.2d 512, 513–14 (1980). . . . In adopting this standard, our Supreme Court has pertinently noted that "deference to the parental relationship is not an archaic adherence to any property rights theory of the family . . . Our determination today is only an appropriate recognition that the blood relationship of parenthood has traditionally served and continues to serve as our society's fundamental criterion for allocating control over and responsibility for our children, and that without some showing of harm, the courts should not interfere with that

arrangement." *Ellerbe v. Hooks, supra,* 490 Pa. at 369, 416 A.2d at 514–15.

Notwithstanding the acknowledged importance of the parental interest in custody, application of the "best interests" standard requires the court to consider other factors in making its determination. Our Supreme Court has stressed this fact in custody disputes between parents and third parties, and its observations in that context are equally relevant here. In *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157 (1980), the Court stated: . . .

"the *Hernandez* [i.e. *In Re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977)] standard, adopted by this Court in *Ellerbe,* was intended to emphasize the importance of the maintenance of the parental relationship, yet at the same time permit the hearing court to award custody to the third party where the best interests of the child will be clearly served by such a decision. This point is best demonstrated by the fact that this Court in Ellerbe, after embracing the Hernandez standard, applied it and sustained the decision of the hearing court awarding custody to the maternal grandmother. *Ellerbe v. Hooks, supra.*

. . . "Restated, the standard in this area is not to be construed as precluding a custody award to a non-parent, absent a demonstration of the parent's dereliction. We again emphasize that the standard seeks only to stress the importance of parenthood as a factor in determining the best interests of the child. However, other factors which have significant impact on the well being of the child can justify a finding in favor of the non-parent, even though the parent has not been shown to have been unfit." *Id.,* 491 Pa. at 328, 421 A.2d at 160–61 (footnote omitted). See also *Ellerbe v. Hooks, supra,* 490 Pa. at 368, 416 A.2d at 514 ("No doubt in some instances the best interests of the child are served by awarding custody to a non-parent.") Factors of importance in determining the best

interests of a child in any custody dispute include, *inter alia:* (1) "the length of time the child has been separated from the parents," ... (2) "[t]he adverse effect upon the development of youngsters caused by the disruption of an established stable relationship, ..." (3) the desirability of raising siblings together "whenever possible," ... and (4) the fitness of the party or parties seeking custody ... *See generally* A. Momjian & N. Perlberger, *Pennsylvania Family Law,* §§ 5.1, 5.3 (1978). The latter consideration is, of course, especially important when a parent is seeking the return of a dependent child, since in many cases the original finding of dependency and removal of the child resulted from the parent's past unfitness to retain custody.

*In re Donna W.,* 284 Pa.Super. at 343–346, 425 A.2d at 1134–1136 (1981) (some citations omitted).

■ In the case before us, the judge in the court below conscientiously used the best interests of the child standard, but discounted the natural parent's claim to the custody of her daughter. In applying the best interests standard he relied on the evidence introduced by the third parties—i.e. both Mrs. Freeman and CYS. This evidence was based on observation by their expert witnesses of the parties involved during evaluation sessions at the clinic. The reports from the clinic consisted of (1) a psychiatric assessment of Desiree, based on examination by an intake worker at the clinic and by the psychiatrist, made at the request of the court, to ascertain the quality and intensity of the relationship between Desiree and Mrs. Freeman, (2) a psychiatric examination of Concetta to ascertain Concetta's present emotional state and whether there was evidence of her inability to give appropriate care to a 3 year old child, and (3) an evaluation of the mother-child relationship between Concetta and Desiree which the therapist conceded in her report was impossible to make in a one hour play therapy session. The first report stated that Desiree is an apparently normally developed youngster. The report also stated that Desiree had formed a definite bond with Mrs. Freeman who is now her psychological mother, and warned of serious emotional diffi-

culties which could arise if Desiree were removed from Mrs. Freeman. The report also stated, however, that removal "might be less damaging if there is a way of insuring that the new house . . . would contain a mother who is able to offer a stable permanent situation, and appropriate loving care, nurturance, and necessary discipline and guidance." This last statement was not referred to by the lower court. The second report found no mental disorder in Concetta and a healthy motivation for wanting her daughter back; the psychiatrist added: "I did not see evidence that she would intentionally neglect the child, nor that she would be unable to be at least as good a mother as many other slightly limited persons, but she could use further support services." The report concluded with the remark that there were no psychiatric grounds for advising against the return of the child.

The third report was very inconclusive but the chief doubt which the therapist had with respect to Concetta's ability to mother was whether she could set limits on Desiree's behavior.

Of this testimony the lower court considered chiefly the evidence of the close relationship between Desiree and Mrs. Freeman, and the warning by the psychiatrist of the possible damaging effect on Desiree if she were removed from Mrs. Freeman's care.

The opinion of the lower court, then, concentrates on the two related factors of the length of time Desiree has been separated from her natural mother and the effect on her of removal from the foster home. It does not apply the other factors: the natural parent's interest in regaining custody of her daughter, the desirability of raising siblings together, and the fitness of the natural mother. *See In re Donna W., supra. See also Commonwealth ex rel. Grimes v. Yack*, 289 Pa.Super. 495, 433 A.2d 1363 (1981), where Judge SPAETH, in refusing to remand for the lower court to hear testimony from a psychiatrist about the psychological bonding of the child to the appellants, said that the concept of a child's best interests is a legal concept, not to be defined in psychiatric terms. *Id.*, 289 Pa.Superior at 528, 433 A.2d at 1381. This

.. 

seems to mean that *the question of bonding should not be the only or the deciding factor.*

Additionally, a scrupulous examination of the record reveals to this court nothing whatsoever about the home in which Desiree has been placed. Desiree has obviously thrived there. The clinic reports indicate that she is content under Mrs. Freeman's care. We are nevertheless reluctant to affirm an award of custody to a home of which we know nothing[3] beyond some shadowy allusions in the testimony, when the record shows that the natural mother has made significant progress in her mothering ability. This marked improvement in her situation adds weight to the side of the scales already tipped in her favor.

For these reasons we are constrained to vacate the order of the lower court and remand for a reconsideration of Concetta's petition for the return of her daughter.[4] In considering the evidence already introduced in light of the requirements of this opinion the lower court shall consider additional evidence to reflect the current situation.

HESTER, J., files a dissenting statement.

HESTER, Judge, dissenting:

I am constrained to dissent. As our Supreme Court stated in *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157 (1980) at page 160 of 421 A.2d:

"Thus, the *Hernandez* standard, adopted by this Court in *Ellerbe,* was intended to emphasize the importance of

3. *Compare Jones v. Floyd,* 276 Pa.Super. 76, 419 A.2d 102 (1980) (reversed and remanded where, inter alia, inadequate testimony as to living conditions of the parties); *Lewis v. Lewis,* 267 Pa.Super. 235, 406 A.2d 781 (1979) (remanded for full hearing as to fitness, circumstances and home environment of each party).

4. *Compare In re Interest of S.M.S.,* 284 Pa.Super. 9, 424 A.2d 1365 (1981) (evidence of child's special needs and parents' difficulties sufficiently complete and compelling to establish clear necessity for continued separation of child from parents); *In re Donna W.,* 284 Pa.Super. 338, 425 A.2d 1132 (1981) (vacated and remanded where lower court overemphasized some evidence and failed to consider other relevant factors in denying petition for return of children formerly adjudicated dependent to natural mother).

470

the maintenance of the parental relationship, yet at the same time permit the hearing court to award custody to the third party where the best interests of the child will be clearly served by such a decision. This point is best demonstrated by the fact that this Court in *Ellerbe,* after embracing the *Hernandez* standard, applied it and sustained the decision of the hearing court awarding custody to the maternal grandmother. *Ellerbe v. Hooks,* 490 Pa. 363, 416 A.2d 512 (1980)."

In my judgment, the best interests of Desiree dictate that her custody be retained by her foster parents. I would, therefore, affirm on the opinion of Judge Wettick of the court below.