Appeal of ALLEGHENY COUNTY CHILDREN AND YOUTH
SERVICES (Two Cases).

In re C.P.

Superior Court of Pennsylvania

Argued April 15, 1986.

Filed June 11, 1986.

James A. Esler, Pittsburgh, for appellant.

Joseph Mack, Pittsburgh, for appellee (at 1090).

Georgene Siroky, Pittsburgh, for appellee (at 1091).

Before TAMILIA, KELLY and MONTGOMERY, JJ.

PER CURIAM:

These consolidated appeals, instituted by Allegheny County Children and Youth Services, arise out of a requisition filed in the state of North Carolina pursuant to the Interstate Compact on Juveniles, 62 P.S. § 731, requesting C.P.'s return to her father's home in North Carolina.

C.P. was born on July 26, 1971, and in December of 1984 gave birth to a son, J.P. J.P.'s birth was the result of C.P. becoming impregnated by Gregory Kline when she was twelve years old. Gregory Kline was charged with statutory rape in connection with the aforementioned incident and is currently awaiting trial. C.P. and her infant son, J.P., resided in North Carolina with C.P.'s father, her legal

guardian, before running away from home in February of 1985. C.P. alleged various undocumented instances of abuse by her father. C.P. fled with J.P. to Allegheny County where they stayed with Mrs. Katherine Kline, Gregory's mother and J.P.'s paternal grandmother.

After receiving the requisition for C.P.'s return, Pennsylvania authorities took both children into custody. Following a shelter hearing on February 19, 1985, they were returned to Mrs. Kline's home pending receipt from North Carolina of materials necessary for resolution of the case under the Interstate Compact. Upon request of the lower court, the juvenile authorities in North Carolina, by letter dated April 11, 1985, gave assurances that they would intervene immediately upon C.P.'s return to North Carolina to provide supervision and protection from the alleged abuse of C.P. by her father.

The lower court held a hearing to determine C.P.'s best interests after concluding that Pennsylvania courts have the right to inquire into the propriety of a requisition filed under the Compact and order a child's return only if such return would serve the best interests of the child. Upon conclusion of said hearing, it was determined that the best interests of both children would be served by remaining in Pennsylvania and residing with Mrs. Kline. The lower court held that in view of C.P.'s allegations of abuse and of the apparent lack of interest of her parents and of the North Carolina authorities in her welfare, it doubted a return to the family environment in North Carolina would serve her best interests. Appellant, Children and Youth Services, petitioned for reconsideration and upon reconsideration the prior Order was upheld. This appeal followed.

Appellant now contends that C.P. should have been returned to North Carolina pursuant to the requisition filed under the Interstate Compact. Appellant submits that the plain language of the Interstate Compact indicates that it is for the court of North Carolina to determine what is in the child's best interest and the power of the Pennsylvania court is limited to a determination of whether the demanding court has made all the findings necessary to issue a

requisition. We agree, and hold that the lower court had no jurisdiction to inquire into C.P.'s best interests but was required to send C.P. to North Carolina pursuant to the requisition if the requisition was found to be properly issued.

We first note that both North Carolina and Pennsylvania have adopted the Interstate Compact on Juveniles (G.S. §§ 110–58 to 110–64, and 62 P.S. § 731 respectively). The underlying purposes of the Compact are clearly set forth in Article I which provides, in pertinent part, that:

> The cooperation of the states party to this compact is therefore necessary to provide for the welfare and protection of juveniles and of the public with respect to ... (3) the return, from one state to another, of non-delinquent juveniles who have run away from home.... It shall be the policy of the states party to this compact to cooperate and observe their respective responsibilities for the prompt return and acceptance of juveniles and delinquent juveniles who become subject to the provisions of this compact....

(62 P.S. § 731, Art. I)

It becomes apparent that the underpinnings of the Compact are based upon notions of reciprocity and cooperation between the participating states. Article IV of the Compact, dealing specifically with the return of runaways, when read in conjunction with Article I, further delineates the role of the Pennsylvania courts when presented with an out-of-state requisition. Article IV provides, in part, that,

> ... [i]f the judge of such court [to whom the requisition is addressed] *shall find that the requisition is in order,* he shall deliver such juvenile over to the officer whom the court demanding him shall have appointed to receive him. The judge, however, may fix a reasonable time to be allowed for the purpose of testing the legality of the proceeding. (emphasis added)

(62 P.S. § 731, Art. IV)

Thus, this section makes delivery of the juvenile to the demanding state mandatory as long as the requisition itself

is in order. Appellees would have us read the provision to include a requirement that before a runaway juvenile can be returned to the demanding state the asylum state must determine if it is in his/her best interests to do so. With this we cannot agree.

In the case sub judice, the Pennsylvania court could only determine if the demanding state properly followed the guidelines set forth in Article IV for issuing a requisition. Article IV provides that upon proper petition by the parent, guardian, person or agency entitled to legal custody of a runaway child, C.P.'s father herein, the judge of the court (North Carolina) to which this petition is presented:

> ... may hold a hearing thereon to determine whether for the purposes of this compact the petitioner is entitled to the legal custody of the juvenile, whether or not it appears that the juvenile has in fact run away without consent, whether or not he is an emancipated minor, and whether or not it is in the best interest of the juvenile to compel his return to the state. If the judge determines, either with or without a hearing, that the juvenile should be returned, he shall present to the appropriate court or to the executive authority of the state where the juvenile is to be located a written requisition for the return of such juvenile.

(62 P.S. § 731, Art. IV)

Additionally, Article IV, in specifically addressing the mandatory format of the requisition order, provides that,

> ... [the] requisition shall set forth the name and age of the juvenile, the determination of the court that the juvenile has run away without the consent of a parent, guardian, person or agency entitled to his legal custody, and that it is in the best interest and for the protection of such juvenile that he be returned....

(62 P.S. § 731, Art. IV)

At no time during the present action did any of the parties argue that the requisition issued by North Carolina was deficient in any of its findings or procedurally defective in any respect. It is undisputed that James, C.P.'s father,

petitioned the North Carolina court setting forth all required information with a verifying affidavit. After a review of the requisition, it is also clear that Judge Burris of North Carolina made all of the required determinations and findings and presented a proper requisition for C.P.'s return to the Pennsylvania courts.

■ The lower court's concern with North Carolina's ability to effectively provide protection and care for C.P. and J.P., however well intended, is misplaced. As principles of comity and reciprocity dictate, Pennsylvania courts must presume that other states party to the Interstate Compact on Juveniles will act as expeditiously and effectively in dealing with juveniles as our state would. That is not to imply that we advocate sending C.P. and J.P. back to North Carolina on the next bus without any indication that North Carolina authorities are aware of C.P.'s allegations of abuse or are actively investigating them. Rather, instead of second-guessing North Carolina's social services programs, we find it proper for our courts to require evidence of a proposed plan, from the demanding state, for dealing with the juvenile when he/she is returned. This will insure that the demanding state has been fully apprised of the juvenile's situation and plans to take action in concert with that knowledge. We do not think this requirement is overly burdensome for the demanding state. As a practical matter, the protective service agencies of each involved state usually work in conjunction with each other to implement a suitable course of action with regard to the juvenile.

■ Appellant next contends that the Uniform Child Custody Jurisdiction Act, 42 Pa.C.S.A. § 5341 et seq., is not an alternative basis for jurisdiction in the instant action, as suggested by appellees and the lower court. Under § 5344(b), entitled Physical presence insufficient to establish jurisdiction in custody, none of the requisites for a custody action were met. There had been no prior custody Order and although neglect was alleged, it was not established and finally, no emergency conditions existed which might have permitted a review of custody. All exigencies

of this situation were adequately covered by the dependency petition and the hearing under the interstate compact. We find the Uniform Child Custody Jurisdiction Act entirely inapplicable to the case sub judice. The UCCJA deals exclusively with custody disputes. There has been no application to any court of this Commonwealth, or elsewhere, seeking a custody determination with respect to C.P. or J.P. The Pennsylvania Rules of Civil Procedure, Rule 1915.3, requires commencement of a custody action by complaint in the form required by Rule 1915.15(a). C.P.'s father, apparently her legal guardian, has a prima facie right to custody of C.P. in the absence of valid claims by other interested parties. *In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977). Mrs. Kline has merely agreed to provide C.P. and J.P. shelter in her home; she has not petitioned the court for custody of either child. While unfounded allegations of the abuse of C.P. by her father were considered by the lower court, it ignored the evidence established of the statutory rape of C.P. by Gregory Kline and the continuing contact he has with her while she is in the home of Gregory's mother, Mrs. Kline. When there is a paucity of facts to establish the alleged abuse (of an out of county parent), the court would not affirm the lower court's award of custody to the parent (party) alleging the abuse. *Commonwealth ex rel. Lettie H.W. v. Paul T.W.,* 281 Pa.Super. 262, 422 A.2d 159 (1980).

We further hold that J.P., C.P.'s infant son, should be returned with her to North Carolina. There is no evidence on the record to support a separation of the infant, J.P., from its mother, C.P., and Pennsylvania would have no interest in the infant independent of that of C.P. They would both be dealt with as dependent children through the auspices of the North Carolina children's services in the environment best conducive to resolution of their problems and fulfillment of their needs. The prima facie right to C.P.'s custody of J.P. applies (*Hernandez, supra*) and C.P. should be with her father; J.P. should likewise be there.

Since the legislature made void common law marriage between persons under 18 years of age, 23 P.S. 204(4), as a result of a case which held common law marriage between an adult male and a minor female valid despite an Order of court enjoining it, *In the Interest of Miller*, 301 Pa.Super. 511, 448 A.2d 25 (1982), and there is no possibility of a parentally approved marriage under the Marriage Law, 48 P.S. § 1–1 et seq., there is no likelihood of a marital relationship between Gregory and C.P. To permit this situation, where a man is under indictment for sexually assaulting a child, condoning continued contact between them through placement of the minor female with his mother, ignores the entire thrust of the Child Protection Acts promulgated throughout this country to control and prevent such behavior.

Throughout the transcript of the hearing in this matter, it was clear that the hearing judge understood and perceived the nature of the legal issues before him and was initially impelled to follow the mandate of the statute. It appeared, however, that the longer the hearing progressed, the judge, out of compassion and emotional response to the pleas of the child and Gregory Kline, grew more sympathetic and eventually ruled not to return the children to North Carolina. We have great respect for the trial judge and fully understand this reaction. However, it is unlikely that in any contested runaway case there is a willing return to the home jurisdiction by the child and unquestionably the natural inclination is to accede to the emotional plea to remain in the new environment despite the legal and sociological reasons for return. This case appears to be no exception to the basic purpose for the law requiring return.

Accordingly, the Order of the lower court placing C.P. and J.P. in the home of Katherine Kline is reversed. The requisition must be honored, and C.P. and J.P. returned to North Carolina.

Order reversed.