## Bohachevsky *v.* Sembrot, Appellant.

Argued April 12, 1951. Before STERN, JONES, BELL, LADNER and CHIDSEY, JJ.

*Walter L. Hill, Jr.,* with him *O'Malley, Harris, Harris & Warren,* for appellants.

*Robert E. O'Brien,* with him *Edward J. Kelly, W. J. Fitzgerald* and *Fitzgerald & Kelly,* for appellee.

OPINION BY MR. JUSTICE JONES, June 27, 1951:

This is an appeal by the defendants from a final decree in equity entered by the learned court below after full hearing on the complaint of the plaintiff, Most Reverend Constantine Bohachevsky, Bishop of the Ruthenian Greek Catholic Diocese of the United States, and the answer thereto by the defendants. The individual defendants are lay members and officers of SS. Cyril and Methodius Greek Catholic Church of

Olyphant Borough, Lackawanna County, Pennsylvania, and several banking depositories of the church which is, and ever since 1892 has been, a Pennsylvania corporation of the first class. The suit was originally instituted by Reverend John Ortynsky, pastor of the church, but, following his death, Bishop Bohachevsky was duly substituted of record as plaintiff.

The plaintiff bishop was assigned to his office, as Bishop of the Ruthenian Greek Catholic Diocese of the United States, in 1924 by His Holiness Pius X, Pope of the Roman Catholic Church. He sought an injunction to restrain the defendants from interfering with priests (appointed and designated by him) in the performance of their duties as pastor and assistant pastor of the Olyphant parish, such duties including, inter alia, the administration of the "temporal" affairs of the church and the control and management of its property and the parish parochial school. Preliminary objections by the defendants were overruled as was also the defendants' motion to dissolve the preliminary injunction granted by the court.

The hearing, which consumed many days, produced a printed record of 1701 pages which includes the testimony taken in a prior related court proceeding: see *Siniawa et al. v. Chylak et al.,* 4 Lackawanna Jurist 207 (1902). A large number of documentary exhibits were also received in evidence. The learned chancellor made findings of fact and conclusions of law and entered a decree nisi awarding the plaintiff the relief prayed for in the bill. Upon exceptions, the chancellor's findings and conclusions and decree nisi were unanimously confirmed by the court en banc which thereupon entered the final decree from which the defendants have appealed.

The question involved in this proceeding is exactly the same as in the case of *Kraftician v. St. Peter and St. Paul's Russian Greek Catholic Congregation of*

*Carnegie,* 366 Pa. 431, 77 A. 2d 875, i.e., whether the subject church is in union with Rome. Wherever the controversy has arisen, it has been a manifestation of religious differences which had their inception in Galicia, Austria, whence the respective founders of both churches above-mentioned emigrated to America some sixty years ago. The nature of the dispute and its background were interestingly stated in an opinion for the House of Lords and Privy Council in 1907 in a case which arose in a court of the Province of Alberta, Canada, in 1904, and, after travelling through successive appellate courts of Canada, reached the Privy Council in London on appeal by special allowance: see *Zacklynski and Others v. Polushie and Others,* Law Reports, Appeal Cases, 1908, p. 65.[1]

---

[1] In *Zacklynski and Others v. Polushie and Others,* supra,— "The only question involved was . . . whether the respondents [were] entitled as trustees of the church and land in suit to hold the same . . . for the purposes of a Greek Orthodox church, that is, of a church independent of the authority or control of the Roman Catholic Church and hierarchy, or whether . . . the church and land [were] appropriated to the purposes of a church united with and subject to the jurisdiction of the Pope and the authorities of the Roman Catholic church of the diocese in which the land and church are situated." In delivering the judgment, Lord Macnaghten, who wrote the opinion for the tribunal, said in connection presently pertinent,—"In Galicia, the province from which the settlers came, the great bulk of the population is divided pretty equally between Poles or Polaks, as they are sometimes called, and Ruthenians, or Little Russians. Held together by the strong hand of the Austrian Government, these two sections of the community have never become united or even assimilated. Strangers in race and in religion, they keep separate and aloof, each regarding the other with jealousy and dislike. 'For many generations,' says the Rev. Father Philas, a witness for the plaintiffs, who was a travelling missionary in Galicia and knows 'the whole of it,' 'there has been a struggle between the Polish and the Little Russians, and the latter have been kept down.' The Poles to a man are Roman Catholics. The Little Russians are, as Father Philas tells us, 'de-

A Greek Catholic Church in union with Rome is a church which is subject to the jurisdiction and control of the Pope and of the authorities of the Roman Catholic Church of the diocese wherein the church and its property are located. Such a church is also known as a Uniate Church. In the *Kraftician* case, as in the instant case, the learned chancellor found the Greek Catholic Church, there involved, to be a Uniate Church. However, in that case the court en banc, composed of the chancellor and two other judges, unanimously overruled three of the chancellor's crucial findings of ultimate fact, made findings to opposite effect, set aside the decree nisi and entered a final decree awarding the particular injunctive relief there sought on the ground that the defendant church was an independent and autocephalous church not under the ecclesiastical jurisdiction of the Pope of Rome. On appeal, we

---

voted to the religion, rites, and ceremonies of the Greek Church.' The Orthodox Greek religion is proscribed in Galicia. For fear of Russian intrigues it is not tolerated there. Adherents of the Orthodox Church, as the Ruthenians or Little Russians originally were, are liable to be arrested and punished if they are suspected of an intention to revert to that faith. As a condition of being allowed to use their own liturgy and rites and to have their services conducted in the old Slavonic language, the Little Russians in Galicia are compelled to acknowledge the supremacy of the Pope and so to accept those points of doctrine which the Roman Church holds and the Greek Church rejects. In other countries and other provinces which, in course of time, have been detached from the Greek Empire and have fallen under the sway of devout Roman Catholic sovereigns something of the same sort has happened. The result has been the creation of a composite Church, half Roman and half Greek—Roman to the educated priesthood, but Greek to the ignorant peasantry. Its proper style is the 'Uniate Church,' a title derived from its enforced union with Rome." For reasons appearing of record to which Lord Macnaghten's opinion otherwise makes reference, the church in that case was found to be an independent body not subject to the control or authority of the Pope.

affirmed, necessarily, because we were without right or justification to interfere with the lower court's conclusions which were reasonable and proper inferences from the many and unexcepted-to findings which were not open to attack here: see *Malanchuk et al. v. St. Mary's Greek Catholic Church of McKees Rocks,* 336 Pa. 385, 396, 9 A. 2d 350. While a chancellor's inferences and ultimate conclusions from primary facts are always open to review (*Custis v. Serrill,* 321 Pa. 154, 156, 183 A. 774), they will not be set aside unless we are able to say that they are unreasonable and unjustifiable inferences on the basis of the unexceptionable facts found: cf. *More v. People's Bank & Trust Company,* 297 Pa. 252, 259, 146 A. 896. For that reason the ultimate conclusions of the court en banc in the *Kraftician* case necessarily prevailed.

Likewise, here, we have no alternative but to affirm the decree of the learned court below. Our examination of the voluminous record convinces us that the chancellor's findings of fact are supported by substantial evidence; and, having received the approval of the court en banc, they are binding upon us on review. As stated in *Custis v. Serrill,* supra, at p. 156, —"The rule is long established that the findings of a chancellor, when affirmed by the court in banc, have the force and effect of a jury's verdict, and, ordinarily, will not be disturbed on appeal: [citing cases]." Indeed, when findings are unexcepted-to, as a number of the present are, we are under no duty to examine the record to ascertain whether they are supported by evidence: *Himrod v. McFayden,* 283 Pa. 103, 105, 128 A. 733.

Thus, it is conclusively established in this case that "The people, who founded and established SS. Cyril and Methodius Greek Catholic Church in the Borough of Olyphant, intended to and did establish a Catholic church of the Greek Rite in union with

Rome." The record leaves no doubt as to the verity of that finding. And, that determines, for all legal purposes, the character of church it is: see *Church of God v. Church of God,* 355 Pa. 478, 485, 50 A. 2d 357; and *Canovaro v. Brothers of The Order of Hermits of St. Augustine,* 326 Pa. 76, 82, 191 A. 140. Indeed, the appellants admit that the church has at all times been a Uniate Church; yet, they deny the authority and jurisdiction of the Pope in certain respects. The contention amounts to a denial of terms. The chancellor found, and the appellants have not excepted to the finding,—"That according to ecclesiastical law the Pope is the head of both the Latin Rite and Oriental Rite and he is the supreme authority in all matters of faith, morals, discipline and ceremonies. In this capacity, he appoints all bishops in all rites. The priests, in turn, are appointed by the bishop. The control of the property of the church, ecclesiastically, both real and personal, under Canon Law, is in the Bishop and in the priest as his representative in a particular parish." From that and other unassailable findings, the chancellor's legal conclusion properly followed that,—"The church involved herein is a religious corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is subject to all of the laws, rules and regulations of the Greek Rite under the jurisdiction of the Pope of the Roman Catholic Church, and is under ecclesiastical jurisdiction of the plaintiff Bishop." The plaintiff was therefore entitled to the relief sought.

Decree affirmed, the parties to bear their respective costs.