489 A.2d 798

**Jalal FATEMI**

v.

**Linda Brodbeck FATEMI, Appellant.**

Superior Court of Pennsylvania.

Argued March 21, 1984.

Filed Feb. 27, 1985.

592

Joseph P. Lenahan, Scranton, for appellant.

Richard M. Goldberg, Wilkes-Barre, for appellee.

Before SPAETH, President Judge, and BECK and TAMI-LIA, JJ.

BECK, Judge:

Appellant mother challenges the lower court's denial of: (1) her petition for custody of her sons; (2) her petition for more liberal partial custody, and (3) her petition for partial custody privileges in the presence of male companions. With one modification, we affirm.

Appellant Linda Fatemi ("mother") and her divorced husband, appellee Jalal Fatemi ("father"), have two sons: Kevin born in 1975, and Curt in 1977. The parties separated early in 1980. The mother retained custody of the two children.

In April 1980 the father went to Iran to be with his family and took the children with him without informing the mother. She did not see the children again until December 1980 when he returned to Wilkes-Barre with them. At his insistence, the parties met in Switzerland in August 1980 and reached an agreement which was incorporated into their divorce. The agreement provided that the father would retain custody of the children, with the mother having visitation privileges each day in his home. Both parties found this arrangement unworkable.

On September 15, 1982, the mother filed a petition for modification. On October 14, 1982, the parties, both represented by counsel, met with a master and entered into a stipulated agreement ("stipulated agreement") which was converted into a court order on October 15, 1982. The order confirmed custody in the father. The mother was awarded partial custody two weekends a month, with overnight privileges on one of those weekends, and three hours every Tuesday and alternating Mondays.

Problems arose immediately with this schedule. In December 1982, the mother filed a petition for contempt, and the father filed a petition to modify. After unsuccessfully attempting to resolve the matter through conferences with the parties, the court entered an interim order. It also ordered evaluations of the children, the parties, and their homes.

The parties continued to experience problems with the schedule. In April 1983, the father filed a contempt petition. The mother filed an answer and new matter requesting custody be transferred to her.

The trial court held hearings on May 26 and 31, and June 7, 1983. In order to consolidate the numerous petitions before it, the court with the agreement of the parties, treated the matter as a custody hearing on the merits.[1] N.T. 5/26/83, 4–6. On June 8, 1983, the trial court issued an order confirming custody in the father, granting the mother expanded partial custody on weekends as well as holidays, and one week in the summer. The order prohibited the mother from having male companions present while she was enjoying partial custody. The mother appeals this order.

Initially we note that the trial court fulfilled its responsibility to provide a complete record. The judge also wrote a thorough and well considered opinion. *In re Donna W.,* 325 Pa.Super. 39, 472 A.2d 635 (1984). Both parties were afforded full opportunity to present evidence on all aspects of the dispute before the court. The trial court interviewed both children in chambers, and the following witnesses testified: appellant, appellant's mother, appellant's sister, appellee, and appellee's housekeeper.

---

1. Ordinarily, a trial court will not conduct a hearing to reconsider the merits of a previous custody order absent a showing of changed circumstances. *See English v. English,* 322 Pa.Super. 234, 469 A.2d 270 (1983); *Daniel K.D. v. Jan M.H.,* 301 Pa.Super. 36, 446 A.2d 1323 (1982). However, here, there were several petitions before the court. By agreement of the parties, amounting to a stipulation of changed circumstances, the court consolidated the several petitions and heard the matter on the merits correctly applying the best interest of the child standard. *See Daniel K.D.*

The appellant contends that the trial court erred in awarding custody to the father. Alternatively she argues that the trial court erred in not granting her more liberal partial custody. In addition, she maintains it was error for the trial court to prohibit her from having male companions present when she is with the children.

We disagree with the mother's first contention that the trial court erred in affirming custody in the father. She asserts that uncontradicted testimony reveals that the father initially obtained custody by taking the children to Iran without her knowledge and thereafter frustrated her partial custody privileges by taking the children to Bermuda without informing her.

The trial court heard the case on the merits and properly concluded that the mother had not met her burden of showing that the best interests of the children necessitated a shift in custody. Although her arguments were manifold, the mother centered them on the father's obstruction to her partial custody. Since the October 15, 1982, order the father has on one occasion violated her partial custody privileges by taking the children to Bermuda during a portion of her partial custody time.

The obstruction of a non-custodial parent's right to contact with her child is an extremely serious matter, especially when it violates court-ordered visitation or partial custody. *Pamela J.K. v. Roger D.J.*, 277 Pa.Super. 579, 419 A.2d 1301 (1980). Isolated violations, however, must be viewed within the framework of the entire custody arrangement. An isolated violation will not automatically trigger transfer of custody. Our independent review of the record reveals that the children are thriving in their present environment and that the trial court correctly concluded they should not be removed from the home where they had lived for three years at the time of the hearing. *See Commonwealth ex rel. Jordan v. Jordan*, 302 Pa.Super. 421, 448 A.2d 1113 (1982); *Daniel K.D. v. Jan M.H.*, 301 Pa.Super. 36, 446 A.2d 1323 (1982).

Appellant alternatively argues that the trial court's order allows her less time with the children than she had under the prior October 15, 1982, order. We disagree. Although the trial court eliminated the disruptive mid-week visits,[2] it granted her expanded partial custody on weekends and provided a holiday schedule and one week during the summer. Overall, the trial court expanded, not curtailed, appellant's time with the children.

The child's best interest constitutes the standard by which a trial court crafts and enters a partial custody order that permits relatively extended periods of parent-child contact. *Dena Lynn F. v. Harvey H.F.*, 278 Pa.Super. 95, 419 A.2d 1374 (1980); *Scott v. Scott*, 240 Pa.Super. 65, 368 A.2d 288 (1976) (Spaeth, J., concurring). We must now consider the standard by which a trial court may fashion and impose restrictions on an award of partial custody. In other words, when may the court impose a restriction and what may be the nature of the restriction?

We begin by noting that usually an award of partial custody will not contain any restriction. A restriction will be imposed if the parties have agreed to a restriction or if the party requesting a restriction shows that without it, partial custody will have a detrimental impact on the child.

It is important for courts to impose restrictions sparingly. *See Ferencak v. Moore*, 300 Pa.Super. 28, 445 A.2d 1282 (1982). Courts ought not to impose restrictions which unnecessarily shield children from the true nature of their parents unless it can be shown that some detrimental impact will flow from the specific behavior of the parent. The process of children's maturation requires that they view and evaluate their parents in the bright light of reality. Children who learn their parents' weaknesses and strengths

2. In matters such as visitation hours, this court will defer to the trial judge provided that the judge's determination is based on findings supported by the record. *Scarlett v. Scarlett*, 257 Pa.Super. 468, 390 A.2d 1331 (1978). The trial court correctly eliminated mid-week visits based on record evidence that they interfered with the children's school work and were disruptive.

may be able better to shape lifelong relationships with them.

■ Once a court concludes that the imposition of a restriction is necessary, it must phrase the restriction in the least intrusive language reasonably needed to safeguard the child. *Somers v. Somers,* 326 Pa.Super. 556, 474 A.2d 630 (1984); *Dile v. Dile,* 294 Pa.Super. 459, 426 A.2d 137 (1981); *Morris v. Morris,* 271 Pa.Super. 19, 412 A.2d 139 (1979). Broad or nonspecific restrictions will be invalidated in favor of narrowly focused, precise restrictions that are directed toward the child's welfare. *Somers; Dile.* This principle underscores the policy that it is preferable for parent-child relationships to be defined by and developed according to the personalities and character of the child and parent, unhampered, to the extent possible, by restrictions imposed by the court.

The trial court imposed the following restriction in the case sub judice: "At no time when the mother has partial custody of the children shall she be in the company of any male companion." Appellant claims that this restriction is invalid because its comprehensive prohibition is unreasonable in light of the evidence and inconsistent with the parties' stipulated agreement. Having carefully reviewed the parties' evidence, we find that the record does not support as extensive a restriction as the trial court placed on appellant's partial custody.

■ As we explained in *Pamela J.K.,* 277 Pa.Super. at 593, 419 A.2d at 1309, "[i]t has long been against our public policy to limit or destroy the relationship between parent and child. . . . Every parent has the right to develop a good relationship with the child, and every child has the right to develop a good relationship with both parents." Therefore, to avoid unduly impinging upon a parent-child relationship, a court must sparingly impose restrictions on the relationship, *see Ferencak,* and must furthermore im-

pose the least intrusive restriction(s) reasonably necessary to assure the child's welfare.[3]

■ We hold that the party moving for the restriction on partial custody must show that the restriction is necessary to avoid detrimental impact on the child and that the content of the restriction manifests a reasonable relationship between the restriction and the avoidance of detrimental impact. *See Somers; Commonwealth ex rel. Drum v. Drum,* 263 Pa.Super. 248, 397 A.2d 1192 (1979).

■ In the instant case the record does not support the broad restriction imposed. The testimony at trial supporting the restriction was weak. The father claimed that the mother's pattern of nonmarital associations with men caused the mother to neglect the children during periods of partial custody. However, the father's testimony in this regard consists of nothing more than vague and general allegations. Recognizing the unsubstantiated nature of the father's allegations, the hearing court accorded "little weight to the allegations of the father of the immoral conduct of the mother," Opinion at 39, and admitted its reluctance "to hold that the father has even established of record through competent evidence that any affairs did in fact occur, let alone that there is an adverse impact on the children." *Id.* Accordingly, we cannot uphold the hearing court's broad restriction as being reasonably required by the evidence of record. Indeed, it would be difficult to uphold any restriction based on the testimony at trial.

The parties' stipulated agreement, however, reveals that the parties mutually assented to some restriction on the mother's contact with the children. We agree with appellant that the stipulated agreement should not be interpreted

---

**3.** The party requesting a restriction on parent-child interaction has the burden of proving that a restriction is reasonably necessary to protect the child's welfare and that the requested restriction is the least intrusive restriction consonant with the child's welfare in the context in which the interaction happens. *Morris v. Morris,* 271 Pa.Super. 19, 412 A.2d 139 (1979); *Commonwealth ex rel. Drum v. Drum,* 263 Pa.Super. 248, 397 A.2d 1192 (1979) (Spaeth, J., dissenting).

as imposing a blanket prohibition on the presence of all men at all times during partial custody.

In conformity with the parties' stipulated agreement and the trial judge's intent as expressed in his written opinion, we reform the restriction on the mother's partial custody as follows: "The mother shall not have a boyfriend present when the mother has partial custody of the parties' children."

As modified, the order of the hearing court is affirmed.

TAMILIA, J., files concurring and dissenting opinion.

TAMILIA, Judge, concurring and dissenting:

I would affirm the Order of the trial judge as I see no abuse of discretion either in the expansion of the mother's right of partial custody or the court's restriction on exposure of the children to the mother's contact with different men while the children are in her custody. The court properly did not view this as a question of the mother's morality, but one of the children's best interest in that being with the mother in the presence of different men at different times can only have a destabilizing effect on them. The situation would obviously be different if the mother was keeping company with one man in a relationship that had stability and promise of permanancy. It does not solve the problem to posit that the children should know their parents for what they are, for better or worse (majority view), when the effect on the children is likely to be harmful.

I also take exception to the majority's basis for evaluating the lower court's finding applying an independant scope of review which is enunciated by *Donna W.*, 325 Pa.Super. 39, 472 A.2d 635 (1984).

The proper scope of review is that enunciated in *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800, 806 (1984) in which our Supreme Court quoted *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 295–6, 368 A.2d 635, 637 (1977) and said:

(O)ur law has long recognized that the scope of review of an appellate court reviewing a custody matter is of the broadest type ... Thus, an appellate court is not bound by deductions or inferences made by a trial court from the facts found; ... nor must a reviewing court accept a finding which has no competent evidence to support it ...

\* \* \* \* \* \*

However, we have also taken great care to stress: "... (T)his broader power of review was never intended to mean that an appellate court is free to nullify the factfinding function of the hearing judge ..."

\* \* \* \* \* \*

(but, instead, is to remain) within the proper bounds of its review and (base a decision) upon its own independent deductions and inferences *from the facts as found by the hearing judge.* (Citations omitted; emphasis added.)

The Supreme Court concluded by saying:

Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support the trial court's factual conclusions, but may not interfere with those conclusions *unless they are unreasonable in light of the trial court's factual findings.* *Bohachevsky v. Sembrot,* 368 Pa. 228, 81 A.2d 554 (1951); and, thus, represent a gross abuse of discretion, *Carson.*[5] (Footnote omitted; explained infra)

Footnote 5 in *Robinson* is the key to the intendment of the Supreme Court in distinguishing the "independent scope of review" from the "broad scope of review" standard. Broad scope of review is implicitly recognized in these Superior Court decisions, including the present one, requiring common pleas courts to explain fully the reasons for their decisions. *See, e.g., Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976); *Commonwealth ex rel. Lettie H.W. v. Paul T.W.,* 281 Pa.Super. 262, 422 A.2d 159 (1980). Were an appellate court to act with absolute independence of a trial court's conclusions in reaching its own decision, the trial court's conclusions would be irrelevant and a

remand for further explication of those conclusions would be erroneous, as well as logically absurd. *Robinson, supra.*

Thus, in this case we exercise a "broad scope of review" in evaluating the case as it made its way through the trial court; and upon such review, determine the appropriateness of the judgment of the trial court, ultimately tested on the abuse of discretion standard.

In this case, it would have been appropriate for the trial court to dismiss the petition for modification of partial custody as the record shows and the court rightly concluded there were no changes of circumstance that warranted a modification of the final custody Order of October 15, 1982. However, by agreement of the parties, the trial court treated the contempt petition and petition for modification by each party as properly raising issues which would be considered and after hearing, modified the Order of October 15, 1982 by Order dated June 8, 1983, from which this appeal was taken. Since neither party raised the issue as to the appropriateness of the June 8, 1983 Order for failure to establish change of circumstance, that issue is waived and may not be considered *sua sponte* by this Court. *Robinson, supra.* However, the desired finality of custody orders will only be achieved by adherence to the tried and tested standards reaffirmed in *Daniel N.D. v. Jan M.H.,* 301 Pa.Super. 36, 446 A.2d 1323 (1982).

The trial court clearly explained in his Opinion the understanding of the parties and the court when the "male visitors" clause was inserted into the order. I would defer to his knowledge and superior opportunity to evaluate and observe the needs of the children and the capacity and intention of the parents.

I would, therefore, affirm the Order of the court below, with directions to make more specific, and consistent with his Opinion, language relating to the mother's contact with male friends while the children are in her control.