**Stephon v. Malmad**

C.P. of Bucks County, no. AO6-95-63055-C-18.

*Anne K. Manley,* for appellee.
*Meg Groff,* for appellant.

RUFE, J., *J.,* March 11, 1996—An appeal has been taken from our order entered from the bench on November 30, 1995, granting partial custody and visitation to the father-appellee, which appeal necessitates this opinion. At the conclusion of said hearing, we determined that mother-appellant's request that appellee's

partial custody and visitation rights be limited to segments of four hours under conditions and circumstances which would allow her to breast-feed the child until the child's third birthday was an unwarranted limitation in the face of appellee's justifiable request for a reasonable order assuring extensive unsupervised contact with his then 4 1/2 month old daughter. We therefore ordered a partial custody schedule for the father from 9 a.m. on Saturday until 6 p.m. on Sunday on alternating weekends, and additional eight hour periods on the other weekends at a time to be agreed upon by the parties, or, if they could not agree, at father's selection. Upon the child attaining the age of one year, the alternating weekend schedules would expand to Friday 7 p.m. until Tuesday morning. Also included in the order was a provision for four weeks of vacation beginning with the summer of 1997, and an immediate initiation of five holidays or special event days per year to be established by agreement of the parties.

Since the focus of the hearing on November 30, 1995 was on the desire of the appellant that a visitation schedule not impede in any way her breast-feeding schedule with the child, born July 15, 1995, we assume that the focus of the objection to the order as drafted relates to the immediate alternating weekend schedule.

We note that a notice of appeal with an emergency application for stay pending appeal was filed with the Pennsylvania Superior Court and served upon us on December 4, 1995. Further, we received an order from the Superior Court dated January 18, 1996:

"That father shall have custody of child every other weekend from 2 p.m. on Saturday until Sunday noon, and on the alternate weekend for a period of eight hours between such times as shall be agreed upon by the parties; and

"That the prothonotary of this court is directed to establish an expedited schedule for the presentation of briefs and of oral argument."

The essential underlying facts are not in dispute and may be briefly summarized. The parties were married on August 7, 1994 and separated at the end of March 1995. A daughter, Hayley Rose Stephon was born July 15, 1995, who was 4 1/2 months old at the time of the hearing. Before the birth of Hayley, appellant expressed to appellee her intention to breast-feed, a practice to which the appellee did not and does not object. In consideration of appellant's breast-feeding with the infant, the schedule for contact between father and infant at the time of the hearing was 10 a.m. to 1 p.m. on Sundays and 6 p.m. to 7:30 p.m. on Tuesday evenings, such visits taking place at appellant's residence. Although appellant offered an expanded schedule at the time of the hearing consisting of approximately five blocks of time per week consisting of four hours at a time, nearly all such blocks were at appellant's home or office or under circumstances in which she would intercede instantly if the infant began to cry or sought her mother's attention.

No evidence was introduced to suggest any inability on the part of either parent to be a loving, effective, devoted caretaker for the infant.

In order to allow appellant the opportunity to develop a full record, we admitted over objection testimony by Christine Mulford, an international board-certified lactation consultant, that to age 1, it would be beneficial that an infant be breast-fed, and that the infant therefore not be separated from her breast-feeding mother for a period in excess of four hours; that the withdrawal from breast-feeding could result in increased risk of harm, including constipation from being fed formula,

and discomfort; that an increased risk of allergy is also introduced when breast-feeding ceases before the age of 6 months. But no specific opinion could be tendered by Ms. Mulford with regard to the cessation of breast-feeding after the child's first birthday without a specific case study of mother and child by a lactation consultant. For the same reason, we also permitted, over objection, the introduction of D-2, a letter from appellant's osteopathic doctor opining that mother and child should not be separated for periods longer than four hours.

Appellant testified that she breast-fed her first child, Lily, by a prior marriage, until her third birthday, "introducing" solid foods at seven months and "supplementing" with solid foods at 1 1/2 years.

Before entering any order, we invited counsel for both sides for citation to any legal authority that justified limitations of reasonable unsupervised contact between father and his infant child so that a mother could maintain unlimited breast-feeding at such times and for such duration as she, in her sole and exclusive opinion, thought warranted. None was provided. We were provided, instead, with voluminous material extolling the physical, psychological, emotional, sociological and immunological benefits of breast-feeding. The provision of such material was unnecessary, however, either to appellee or to the trial court, since a belief in such benefits was acknowledged by both the court and the appellee before the hearing began.

What was at issue, however, was (a) whether any limitation on the scope and duration of breast-feeding, in order to accommodate father's partial custodial rights would have an identifiable adverse effect on *this* child; (b) whether the general well-being of mother resulting from breast-feeding, would be adversely affected by the exercise of father's visitation privileges; and (c)

whether the best interests of the child required us to give precedence of breast-feeding over father's reasonable partial custodial rights.

As to the first issue, we initiated the following colloquy with Ms. Mulford, the lactation expert.

"The Court: . . . I understood from your testimony, Ms. Mulford, that the effect on the child from breast-feeding was capable of varying from child to child. Is that correct?

"The Witness: Yes.

"The Court: The duration, the time for the introduction of supplementation or other foods or formula all vary from child to child?

"The Witness: Yes.

"The Court: Are you able to determine the effect of that variation from child to child by reason of any study or examination of the child or the child in company with the mother?

"The Witness: I'm not sure I understand.

"The Court: Are you able to examine a child and determine whether the physical or emotional effects of the continuing breast-feeding with the child are affected by its withdrawal by examining the child and the mother?

"The Witness: If you looked at the family history of allergy, that would be one example. If there were sensitivities in the history of either parent, you would want to be extra careful to extend breast-feeding as long as you could, exclusive breast-feeding as long as you could until the child needed other foods nutritionally. That's one example. I am a nurse and a lactation consultant, and I work in concert with a family doctor—

"The Court: Would you ever be able to examine a child and say, 'This child suffers from lack of breast-feeding'?

"The Witness: By looking at the child?

"The Court: Yes, or by any study, by any examination.

"The Witness: By looking at the history of the child and seeing what kind of illnesses it had had and how it was fed, you could draw conclusions.

"The Court: In the event breast-feeding had been withheld?

"The Witness: When I talk about risks and benefits of breast-feeding, I'm talking about in general large groups, all right?

"The Court: Can you relate any of your studies to a specific client? Can you relate any of your studies to Ms. Malmad, for example?

"The Witness: I know Ms. Malmad on the telephone and here in court, so I don't know her medical history or her baby's medical history and I'm here to testify about the benefit of breast-feeding.

"The Court: But not vis-a-vis this particular father, mother, and child.

"The Witness: I would say that's the case, yes." (N.T. 11-30-95, pp. 62-64.)

In a word, there was nothing in the transcript or from the materials, that suggested any risk of harm to the child from modestly limited access by mother for breast-feeding. The whole of Ms. Mulford's testimony was to extol the virtues of breast-feeding generally, a point that had already been conceded.

As to the second issue, we permitted Ms. Mulford to be examined as follows:

"By Ms. Groff: You've told us about the health benefits to the nursing child. Are there any health benefits to the mother as well as to the child?

"Ms. Manley: Objection.

"The Court: We'll permit it. You may answer. . . .

"The Witness: Quicker recovery from childbirth, but that's passed by now. Women who breast-feed have a lower rate of breast cancer, lower uterine cancer, less osteoporosis. These are small effects, but they are definitely significant. And delayed return of menses, so they tend to get less anemic. And delayed return of fertility.

"I think those would be the major ones.

"By Ms. Groff: Is it as important to the health of the mother as it is to the health of the baby?

"A. No, I think it's much more important to the health of the baby, breast-feeding." (N.T. 11-30-95, pp. 43-44.)

Again, it is apparent from the foregoing exchange that all the benefits of breast-feeding had already occurred to appellant. It is also apparent that these benefits were deemed by Ms. Mulford to be incidental to the greater benefits occurring to the nursing child. Finally, there was no tangible evidence that appellant would not be able to continue with breast-feeding due to the modes and periods of time we allowed for father's partial custody up to the child's first birthday. And from our general knowledge of the wonder of life, we are aware of great multitudes of happy, healthy, intelligent and successful children and adults who never had the benefits of breast-feeding to which this child had already been exposed as of November 30, 1995.

As to the third issue, we found no evidence in the record that the best interests of the child would be

beneficially served by allowing appellant unlimited control of visitation by appellee to indulge her belief in the need for breast-feeding up to the child's age of 2. We believe that for appellee to have accepted such a schedule of visitation as appellant was offering would have subjugated him to her unlimited control, since such a schedule was in accordance with her schedule, at her residence or her office, and would have allowed no adjustment or compromise. We scarcely needed to hear from appellant's expert, psychologist Artis J. Palmo, that a child of tender years or months needs to bond with a father as well as with its mother. Indeed, our whole jurisprudential philosophy of shared legal and physical custody emanates from a belief in the benefit to the child from frequent contact from both parents. *Zummo v. Zummo,* 394 Pa. Super. 30, 574 A.2d 1130 (1990); see also, *Brown v. Eastburn,* 351 Pa. Super. 479, 506 A.2d 449 (1986); *Murphey v. Hatala,* 350 Pa. Super. 433, 504 A.2d 917 (1986); *Ellingsen v. Magsamen,* 337 Pa. Super. 14, 486 A.2d 456 (1984); *In re Wesley J. K.,* 299 Pa. Super. 504, 445 A.2d 1243 (1982). The Pennsylvania Courts diligently protect the noncustodial parent's right to a meaningful parental relationship with his or her child. *Zummo, supra* at 45, 574 A.2d at 1138; see *In re Constance W.,* 351 Pa. Super. 393, 397-99, 506 A.2d 405, 407-408 (1986); *Fatemi v. Fatemi,* 339 Pa. Super. 590, 597-98, 489 A.2d 798, 801-802 (1985). Thus, during lawful periods of visitation a noncustodial parent has parental authority, and restrictions will only be imposed on that authority by consent, or upon clear demonstration that in absence of the proposed restriction, visitation will have a detrimental impact on the child. *Id.* In the event that a restriction is deemed necessary, it must be the least intrusive restriction for the identified purpose. *Id.*

In her statement of matters complained of on appeal, filed pursuant to our order under Pa.R.A.P. 1925(b), appellant raised the following issues:

"(1) It was error or abuse of its discretion for the trial court to preclude and/or ignore or fail to give appropriate weight to evidence concerning the importance of breast-feeding to the physical and emotional health of the child.

"(2) Important admissible evidence was erroneously excluded by the trial court when the parties' marital and family counselor was not permitted to testify.

"(3) It was error for the trial court to conclude that Pennsylvania's Equal Rights Amendment limited its authority to craft a partial custody schedule which took the child's breast-feeding into account."

We have already addressed in detail the weight of the evidence concerning the issue of breast-feeding in paragraph 1, *supra,* and will not duplicate that discussion hereafter. Nor will we revisit our determination that the Pennsylvania Equal Rights Amendment, Pennsylvania Constitution, Article I, Section 28, as cited in paragraph 3, *supra,* abrogated the "tender years" doctrine. *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977); *Commonwealth ex rel. Weber v. Weber,* 272 Pa. Super. 88, 414 A.2d 682 (1979); *Commonwealth ex rel. Peterson v. Hayes,* 252 Pa. Super. 487, 381 A.2d 1311 (1977); *Commonwealth ex rel. Wasiolek v. Wasiolek,* 251 Pa. Super. 108, 380 A.2d 400 (1977). Our request for legal authority from counsel that unlimited breast-feeding to the exclusion of father's reasonable visitation was permitted as an exception to the Equal Rights Amendment produced no such authority, nor are we aware of, nor have we heard of any such authority. We therefore entered an order which recognizes the responsibility of appellant to allow ap-

pellee reasonable contact with his infant child. Nothing in our order prevented or disallowed appellant to breast-feed Hayley during the 295 hours out of 336 hours in every two week period in which appellant had exclusive contact with Hayley. (We note, of course, that the order of the Superior Court of January 18, 1996 expands appellant's time with Hayley to 306 out of the aforesaid 336 hours per two weeks.)

The other issue raised on appeal in paragraph 2 involved the refusal of the court to permit testimony of Julie Santoro, a marriage counselor or therapist. At trial she had been tendered as a witness to testify to various attitudes that were discussed in the counseling concerning breast-feeding, her perceptions concerning the parties and their concern about the child, and motivation of the parties concerning the discussions about the child." (N.T. 11-30-95, pp. 110-11.) The court sustained an objection to the line of questioning based upon our ruling at the time when appellant first sought to introduce appellee's statements during counseling sessions with the therapist:

"The Court: What difference does it make if the parties are separated and the issue before the court is not that of who's going to have principal custody but during what hours or during what circumstances there will be partial custody and visitation on the part of Mr. Stephon? Your client will be permitted to engage in whatever breast-feeding or other practices she wishes to engage in for the health and well-being of the child during the times that she's got primary physical custody of the child. And the issue having been presented to me not seeking primary physical custody, that's not going to be interfered with. Mr. Stephon in addition has testified that he supports the idea of the breast-feeding, so I don't see any issue as to what he said

or how he's going to prevent breast-feeding as she sees it to be done in any event." (N.T. 11-30-95, p. 74.)

We reaffirm our reasoning in refusing to hear from the counselor on November 30, 1995.

Finally, while it would be possible to cite appellant's own example for the proposition that the effects of breast-feeding on the emotional health of a child can be overstated, that is, that her older daughter by a prior marriage was 8 1/2 years old at the time of the hearing, had been breast-fed to the age of 3 by appellant, had had no contact with her father for five years, and was currently in therapy, we declined to draw such a conclusion. We recognized that each relationship among mother, father and child is special and unique, and sought, by our order to preserve the opportunity of each of these parties to develop meaningful parent-child relationships.