**Wade v. Krause**

C.P. of Berks County, no. 08-6716.

*Michael J. Salek*, for plaintiff.
*Jaime L. Wertz*, for defendant.

LASH, *J.*,   December 2, 2010—This court held a custody trial on November 30, 2010. Plaintiff, Donald Wade, is seeking partial custody of the parties' minor child. The court enters the following findings of fact:

## I. FINDINGS OF FACT

1. Plaintiff, Donald Wade (hereinafter "father"), is an adult individual who currently resides at 1233 Sandy River Road, Axton, Virginia 24054.

2. Father and his fiancée, Nicole Howell, who is employed as a respiratory therapist, are planning to be married on December 11, 2010. Father then intends to relocate to his fiancée's residence, owned by her mother, located at 350 Pervie Bowlick Street, Eden, North Carolina, in January 2011. He states that he and his bride will reside there. His mother-in-law, though the owner of the home, will not be residing there.

3. Defendant, Nicole Krause (hereinafter "Mother"), is an adult individual who currently resides at 2693 West Philadelphia Avenue, Oley, Berks County, Pennsylvania 19547.

4. The parties are the natural parents of a minor child, Tyler Lee Wade, born March 10, 2007, (hereinafter "minor child").

5. The parties were never married but resided together sporadically until April 18, 2009. Since that date, the parties have lived separate and apart.

6. Mother resides in the Oley School District.

7. Father currently resides with his father and his grandmother, in his grandmother's house. Father has another child, Ethan Wade, born October 31, 2003, who resides with his mother in Arizona, but who visits with father during the summer months and during the Christmas holiday, through an informal agreement reached between father and Ethan's mother.

8. Mother resides with her paramour, Guy Rudy, the subject minor child, mother's daughter from another

relationship, Elizabeth Krause, born September 16, 2000, and Mr. Rudy's children, Guy Rudy, III, born January 1, 2004, and Jaedon Rudy, born September 21, 2006.

9. Father is currently employed by Roll About Skating Center in Eden, North Carolina, on weekdays from 5:00 p.m. to 10:00 p.m., and Domino's Pizza in Martinsville, Virginia, on Fridays and Saturdays from 5:00 p.m. to 10:00 p.m. or to closing.

10. Mother is unemployed, staying at home to care for the children.

11. The minor child is not enrolled in a school program currently; however, he has been recently tested through BCIU, who recommended that he participate in a speech therapy program. He is also on a waiting list for HeadStart.

12. The within action was commenced by father on October 15, 2009. A temporary order was entered on January 19, 2010 providing that the parties would share legal custody, that mother would have primary physical custody, and that father would have supervised visits on alternate weekends in Berks County on Saturday from 12:00 noon to 5:00 p.m. and Sunday from 12:00 noon to 5:00 p.m., to be supervised by Kids First Visitation Services.

13. Father participated in the supervised visitation on four (4) occasions during the course of 2010 for approximately three (3) to four (4) hours each visit. The visits included a trip to Chuck E Cheese, a petting zoo, a park, and otherwise in his hotel room.

14. Other than the supervised visits, father has had no contact with the minor child since the parties' separation,

other than a brief ten (10) minute visit when father was in Berks County for a support conference. That visit was not initially agreed to by mother and was conducted in the presence of a police officer. There has also been no phone contact.

15. The parties reside approximately seven (7) to eight (8) hours apart, one (1) way.

## II. DISCUSSION

In making a determination, this court considered the testimony of the parties, the maternal grandmother, Denise Taroski, and the exhibits submitted by mother.

Father filed the within action for partial custody, seeking to "see his son as much as possible." He states that since the parties' separation in April of 2009, mother has denied him access to the minor child. With the exception of a ten (10) minute visit with the help of a police officer, father has not had contact with the minor child, except for four (4) supervised visits through the Kids First Agency, pursuant to the temporary custody order entered by this court. While the visits were helpful, they were impractical. Father had to travel from his home in Virginia, a seven (7) or eight (8) hour drive, and stay in a hotel, one (1) or two (2) nights, to enable him to participate in the visitation. There was also a cost of forty dollars ($40.00) per hour for the visits. Father states he was not able to take advantage of all the visits permitted to him under the order because he was financially unable to do so. He believes that mother's resistance stems from father's requesting a paternity test at a child support conference.

There have also been no phone contacts. Father states he has called mother's home several times but was never able to make contact. He states he did not leave a message.

He also did not contact her by e-mail, stating he does not have her e-mail address. Father believes he is capable of caring for the minor child. He cites his agreement with the mother of his other child, Ethan, receiving Ethan for nearly the entire summer and on Christmas holidays. According to father, there have never been any problems with this arrangement.

Father states he has adequate coverage to care for the minor child when he is working. Father's father and grandmother are available and willing to care for the minor child in his absence.

Mother agrees that father should be permitted to have unsupervised visits with the minor child, but that the visits should take place in Berks County, not in Virginia or North Carolina. For one, father has never been alone with the minor child for more than three (3) or four (4) hours. According to mother, when the parties resided together, father was extremely inattentive to the minor child, refusing to provide any caretaking when mother or some other person was available. He would not change diapers or feed the minor child, nor take the minor child to a doctor visit. In fact, when the minor child was hospitalized for three (3) days, father never went to the hospital, even though, according to mother, the minor child needed to have a family member present at all times.

Mother provided an example of the extent of father's laxity through his lack of care of his other child, Ethan. During the time when the parties resided together, Ethan would periodically come to visit. Mother and the maternal grandmother would take Ethan on trips, such as to the Kutztown Fair. Father would not participate. Additionally, on one (1) occasion when it was time for father to return Ethan to his mother in Virginia, father refused, forcing

mother to drive Ethan back herself.

Mother also states that father would make himself unavailable to care for the minor child. When he was not working, he would be away from home playing cards, shooting pool, or being involved in other activities. When he was home, he would often lock himself in the bathroom and remain in there for several hours, running water, and relying on the comfort of a space heater, oblivious to the needs of the minor child.

Mother is also concerned with father's inappropriate use of the computer. On one (1) occasion, father took explicit nude photographs of himself and sent them via computer to another woman. Additionally, he has allowed a pornographic video to remain visible on the computer and, apparently, watches pornography on a frequent basis. Mother points out that these activities were conducted while her elder child, Elizabeth, 7 or 8 at the time, was present in the house. In fact, the camera in which father used to take his explicit pictures was Elizabeth's camera. Mother believes that father does not appreciate the inappropriateness of these materials in the presence of children and was not concerned about their welfare.

The paramount concern in a child custody proceeding is the best interests of the child. *Costello v. Costello*, 666 A.2d 1096, 1098 (Pa. Super. 1995). A determination of what is in the best interests of a child is made on a case-by-case basis and must be premised upon consideration of all factors which legitimately have an effect upon a child's physical, intellectual, moral and spiritual well-being. *Alfred v. Braxton*, 659 A.2d 1040, 1042 (Pa. Super. 1995).

We also note that when restrictions are requested, our

appellate courts have established that such restrictions should be imposed sparingly. As stated by the Superior Court in *Fatemi v. Fatemi*, 489 A.2d 798, 801 (Pa.Super 1985), restrictions should be phrased in the least intrusive language reasonably necessary to safeguard the child.

In essence, according to father, the reason he is not seeing the minor child is because mother is withholding the minor child from him. According to mother, father has not shown any interest or capacity to be a parent. There is some truth in both positions. We agree that mother has not been accommodating, particularly after father requested a paternity test. She admits she was angry and decided to deny him access at that time. Since that time, father has had very little contact. Further, the contacts were supervised. mother appeared to be comfortable with these restrictions, making no effort on her part to expand father's times or rights.

That being said, this court finds the primary problem to be father's inability to assert himself as a proper parent. According to mother's depiction of him, father was almost inert, performing little or no parenting duties when the parties resided together. While father contests this, there is other independent evidence regarding his parenting with Ethan, which confirms his lack of investment in his children. Father was unable to discuss Ethan's grades or status at his school, appearing to have very little knowledge. The fact that he would delegate Ethan's parenting responsibilities to mother, failing to participate in activities with him when he was in Pennsylvania and refusing to return him to Virginia where his mother resided at the time, forcing mother, who was not Ethan's parent, to transport him, is significant, establishing father to be sluggish and unmotivated, particularly in the area of

parenting. This court believes the maternal grandmother when she states that she came to the house on one occasion while mother was unavailable and found father watching the minor child but not attending to his immediate needs, particularly changing his very full diaper.

Respect is earned. Before mother or this court will respect father's abilities to parent, he will have to establish a track record that shows he is willing to do more than just see his son and interact as a buddy, performing the necessary details, including proper supervision, being attentive regarding educational and medical needs, and overseeing day-to-day needs such as feeding the minor child, clothing the minor child, and making sure the minor child is always clean. Up to this point, mother is the only parent willing to perform any of these duties.

We agree with father that supervised visits, particularly with an agency who charges, is impractical and unnecessary. On the other hand, this minor child has not spent any significant time with father, residing with mother almost exclusively. This creates an issue, for father cannot have frequent, short periods of contact with the minor child, as the parties reside several hours apart. Providing father with longer blocks of time would also be problematic, as it would remove the minor child from his stable home, into the care of a person who has not established that he has the capacity to meet his responsibilities.

As a result, for the time being, this court finds that it is appropriate to modify the current order to allow unsupervised partial custody, but only on a limited basis, for three (3) weeks of the year, with two (2) weeks being in the summer months, at father's residence. If father wants additional time with the minor child and is willing to travel to Berks County to see the minor child, that is

also acceptable. The two (2) weeks in the summer can be consecutive or non-consecutive, at mother's discretion. Hopefully, father will establish a suitable track record which will permit the order to be modified to provide father extended time during the summer for this minor child, as most children would benefit from having two (2) parents invested in his upbringing.

We enter the following order:

## ORDER

And now, December 2, 2010, after trial held, custody of the parties' minor child, Tyler Lee Wade, born March 10, 2007, (hereinafter "minor child"), is as follows:

1. The parties shall share legal custody of the minor child.

2. Defendant, Nicole Krause (hereinafter "mother"), shall have primary physical custody of the minor child.

3. Plaintiff, Donald Wade (hereinafter "father"), shall have partial custody for three (3) weeks of each year, with two (2) weeks being during the summer months and the third week to be at father's discretion, either in the summer or during the school year, but over the Christmas or spring break holidays, so as not to conflict with the minor child's school schedule. If father chooses the Christmas holiday, the proposed dates shall not include Christmas Day. The weeks in the summer can be consecutive or non-consecutive at mother's discretion. Father shall make a written request to mother at least ninety (90) days prior to the proposed dates, and mother shall consent to the dates and times, unless there is a conflict in her schedule which is substantial warranting alternate dates, in which case, she shall notify father, also notifying him, if he so

requests, whether she will agree to consecutive weeks in the summer.

4. If father desires additional partial custody time with the minor child, he may secure such time by requesting same from mother. All additional visits shall be in Berks County, Pennsylvania, unless otherwise agreed by mother in writing. Further, these visits shall be on weekends and shall not exceed once per month.

5. The parties shall share transportation, with father picking up the minor child to commence his visits and mother retrieving the minor child at the expiration of father's visits.

6. The attached appendix shall be made a part of the within order.

7. This order shall be considered a final order finally resolving the issues raised in father's complaint in custody.