J-A11028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MADIHA ALVI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AHMAD CHAUDHARY | : | No. 1717 MDA 2024 |

Appeal from the Order Entered November 6, 2024
In the Court of Common Pleas of Montour County Civil Division at No(s):
2020-00252

BEFORE:   MURRAY, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                    **FILED: JULY 2, 2025**

Appellant, Madiha Alvi ("Mother"), appeals from the order entered in the Montour County Court of Common Pleas, which denied her request to relocate with the parties' minor children, M.A. and W.A. ("Children"), and awarded primary physical custody to Appellee, Ahmad Chaudhary ("Father").  We affirm.

The relevant facts and procedural history of this appeal are as follows. The parties married in 2012 and separated in 2020.  The court issued a divorce decree on February 8, 2023.  Pursuant to a stipulation for entry of agreed-upon custody order, the parties shared legal and physical custody of M.A., who was born in 2015, and W.A., who was born in 2017.  Significantly, W.A.

_____

[*] Former Justice specially assigned to the Superior Court.

is on the autism spectrum, and he currently attends a public school in Montour County with an individualized education program. (*See* N.T. Trial, 7/22/24, at 13-15).

Both parties are physicians. Father lives in Danville and works remotely as a radiologist for a medical center in New Jersey. Mother works as an endocrinologist. In 2024, however, Mother accepted an employment offer from a medical practice in Lakeland, Florida.[1] On February 14, 2024, Mother provided Father with notice of her proposed relocation, seeking to move to Florida with Children. Father filed a counter-affidavit on March 6, 2024, objecting to relocation or modification of the custody order. The court conducted a two-day custody trial on July 22, 2024 and August 12, 2024.

By order entered November 6, 2024, the court denied Mother's request to relocate with Children. In light of Mother's move to Florida, the court also adopted a modified custody order providing Father with physical custody during the school year. The order provided for shared physical custody during the summer, with a "three (3) week-on, three (3) week-off" schedule. (Custody Schedule, filed 11/6/24, at ¶1(a)(ii)). The order also mandated that "[a]ll overnights shall occur in Danville, Pennsylvania." (*Id.* at ¶2). On November 25, 2024, Mother timely filed a notice of appeal and concise

_____

[1] At trial, Mother provided a current address in Danville. (*See* N.T. Trial, 7/22/24, at 4). Nevertheless, Mother also testified that her new employer agreed that she could start working in Florida in September 2024. (*Id.* at 59).

statement of errors complained of on appeal.

Mother now raises two issues for this Court's review:

Did the trial court err as a matter of law and grossly abuse its discretion in requiring all of Mother's overnights, and, thus, all of her partial custody, occur in Danville, Pennsylvania instead of her home in Lakeland, Florida where: the trial court's opinion makes no findings of fact to justify placing restrictions on Mother's partial custody; where the law is clear that, in order to impose restrictions on a parent's custody, there must be specific findings that said restrictions are necessary to protect the safety or well-being of the child, the restrictions are necessary to avoid detrimental impact to the child, the restrictions are narrowly tailored, and any such findings must be based upon competent evidence of record; and where the trial court found both parties are capable of attending to the needs of the children and shared custody would be in their best interest if not for the geographical distance?

Did the trial court err as a matter of law and grossly abuse its discretion in crafting its custody order where: the order fails to take into account the geographical distance of the parties and, therefore, is impossible to implement under such circumstances; where the testimony at trial confirmed Mother was moving to Lakeland, Florida following the relocation hearing; and where there is no reasonable basis to impose restrictions on the ability of mother to exercise partial custody in Florida?

(Mother's Brief at 4-5).

Mother's issues are related, and we address them together. Mother emphasizes that she "is not appealing the denial of relocation and the award of primary custody to Father; she appeals the imposition of unwarranted restrictions on her partial custody." (*Id.* at 17). Specifically, Mother contests the court's decision "to restrict Mother's partial custody of the children to Pennsylvania as part of its relocation denial." (*Id.*) Mother notes:

- 3 -

A parent has the general right to exercise freely partial custody of his or her child without restriction (and within one's own home) **unless** the trial court makes specific findings that a restriction is necessary to protect the safety or well-being of the child or is necessary to avoid detrimental impact to the child. This right is not diminished when a parent moves out of state.

(*Id.* at 20) (emphasis in original).

Mother argues that the record is devoid of evidence to support the court's restriction on her ability to exercise custody. Mother insists that "Father presented no expert testimony to support any claim that a young child with autism could not travel between Pennsylvania and Florida for periods of partial custody." (*Id.* at 26). Mother also contends that there is no evidence to support a conclusion that Children are too young to travel to Florida. Moreover, Mother maintains that the modified custody order "is impossible to implement based on the existing geographic distance" between the parties. (*Id.* at 29). Mother complains that the order "is designed as if both parties continue to live in Danville," and the court should have entered an order "reflective of the current circumstances, one that permits Mother to exercise partial custody in Florida." (*Id.* at 30). Mother concludes that this Court must vacate the custody order and remand for the entry of a new order granting her the ability to exercise partial custody in Florida. We disagree.

The following principles apply to our review of a custody order:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include

making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.C.S. v. M.C.S.*, 256 A.3d 449, 457-58 (Pa.Super. 2021) (quoting *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa.Super. 2018)).

[I]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion in awarding custody to the prevailing party.

*E.B. v. D.B.*, 209 A.3d 451, 468 (Pa.Super. 2019) (quoting *King v. King*, 889 A.2d 630, 632 (Pa.Super. 2005)).

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa.Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013) (quoting *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa.Super. 2011)).

The Child Custody Act provides:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court

shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1) and (2.2) which affect the safety of the child, including the following:

(1)     Which party is more likely to ensure the safety of the child.

(2)     The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1)     The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2)     Violent or assaultive behavior committed by a party.

(2.3)     Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3)     The parental duties performed by each party on behalf of the child.

(4)     The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5)     The availability of extended family.

(6)     The child's sibling relationships.

(7)     The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8)     The attempts of a party to turn the child

against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

"An award of partial custody generally does not contain any restrictions." *J.R.M. v. J.E.A.*, 33 A.3d 647, 653 (Pa.Super. 2011).

A restriction will be imposed if the parties have agreed to a

restriction or if the party requesting a restriction shows that without it, partial custody will have a detrimental impact on the child.

It is important for courts to impose restrictions sparingly. Courts ought not to impose restrictions which unnecessarily shield children from the true nature of their parents unless it can be shown that some **detrimental impact** will flow from the specific behavior of the parent.

\*   \*   \*

Once a court concludes that the imposition of a restriction is necessary, it must phrase the restriction in the least intrusive language reasonably needed to safeguard the child.

**Fatemi v. Fatemi**, 489 A.2d 798, 801 (Pa.Super. 1985) (internal citations omitted).

Instantly, the parties provided ample evidence regarding Children's circumstances. Father testified that his current job as a remote worker gives him the flexibility to set his own schedule. (**See** N.T. Trial, 8/12/24, at 267). Father's schedule allows him to perform parental functions, such as transporting Children to their activities and educating Children about their cultural heritage. Regarding W.A., Father caters to his medical and educational needs. Father also outlined the importance of consistency in W.A.'s life:

So [W.A.] is a person of routine. Like I'm just going to explain … how he is. He gets up around 6:30, seven in the morning. The first thing he says [is] he has to go to the bathroom, step one. Step two is go downstairs. Then he says, "I want dudh, dudh, dudh." Dudh is milk in Pakistani language. So then he said, "I want breakfast."

- 8 -

Then you will change him, take him to school, come back and same thing. He has fixed kind of things. He is not flexible. If you don't give him milk in the morning and you give him breakfast, he says, "I want dudh, dudh, I want dudh, dudh." **He's very regimented. And this is part of the autism spectrum.** Kids are like this, they don't … react to change like you will.

(*Id.* at 287-88) (emphasis added).

Father added that both children have a need for stability in the wake of the parties' divorce:

So, the only consistent thing in their family is the house and me and the mother. The mom has changed houses three times in the past two years. She's going to move again. So the sense of belonging is too much in my house, they know where things are, they know where the toy room is. [W.A.] comes back on Friday from mom's place, he knows where the stuff is. [M.A.] knows where his stuff is.

(*Id.* at 304). In particular, Father observed that M.A. has had trouble accepting the parties' divorce:

[M.A.] is not—has not absorbed it well. He still says, "Why are you not together again?" So we try to keep it very friendly. We make sure she is present in their life and she makes sure that I'm present in their life, also.

(*Id.* at 297).

Significantly, Mother echoed Father's assessment of W.A.'s needs:

It's hard. There are good days, there are bad days, and there are really good days then there are really bad days. He needs one-on-one care. He's fearless, he's full of energy, you have to match his energy. Kids with autism spectrum can be a lot to deal with so you have to match his energy and be in shape to run after him and chase him around. Around the house you have to make some settings and arrangements, which I was able to learn from Mission Autism Clinic parent training. You have to keep him safe,

you have to lock the cabinets that might put his health or safety at risk.

* * *

And, most importantly, his personality. He's not a pet that you can just feed and love and that fulfills it all. They learn differently. They need to be grounded differently. So he has sensory needs. We have sensory swing at my place, we have the compression book that we use, we have the foam rollers to give him a massage that we can.

So, sleeping-wise, he's good. It took us a very long time but he is finally potty trained now. But a lot of behavioral therapy on [an] ongoing basis, not just where he attends the day program. **You have to provide that continuity at home in order for him to prosper.**

(N.T. Trial, 7/22/24, at 13-14) (emphasis added).

Following trial, the court reviewed all relocation and custody factors and correctly found that "[t]his is not a case of categorizing one parent as 'good' and one parent as 'bad.'" (Trial Court Opinion, filed 12/19/24, at 8). "But for the distance, shared physical custody would be in the best interests of the children." (*Id.*) Thus, the court focused on preserving stability:

The support system provided [by] Father favors the children.

Father, who ultimately may be as likely as Mother to relocate, has, for now, the more stable home/environment. While [Children] are still relatively young, Father has the advantage of keeping them in an environment (school, church, extracurricular) that they are familiar with and will aid in the transition of custody.

(*Id.*) Our review of the record supports the court's conclusions.

The court's reasoning demonstrates that Children's best interests were

paramount to its analysis. *See M.J.M., supra.* Relying on the parties' testimony, the court recognized the need for consistency in Children's lives as they grapple with the parties' divorce. We cannot say that the court erred in its assessment of Children's physical, intellectual, moral and spiritual well-being. *See id.* The record demonstrates that both children benefit from the stability that comes from remaining in Pennsylvania, at least at this point in their childhood. To the extent that the current custody order requires Mother to exercise custody in Pennsylvania, the court merely attempted to avoid the detrimental impact that would flow from having Children routinely travel to Florida at such a young age.[2] *See Fatemi, supra*. Accordingly, we affirm.

Order affirmed.

---

[2] Regarding Mother's complaint that the modified custody order is impossible to implement due to the distance between Pennsylvania and Florida, the court specifically found that "[b]oth Parties have suggested that the other Party can go to, or return to, where the children are located with ease. … Mother is well paid and appears satisfied indefinitely where she is currently located in Florida." (Trial Court Opinion at 4). Again, our review of the record confirms this assessment. Nevertheless, the evidence adduced at trial focused on the potential benefits and detriments of relocating Children to Florida, rather than the logistics associated with Mother's travel to Pennsylvania to exercise custody. Further, trial occurred before Mother commenced her new job in Florida. Thus, the court and the parties did not have the opportunity to fully explore how Mother's new job might impact her ability to return to Pennsylvania. Under these circumstances, if Mother remains dissatisfied with our holding, we believe the best course of action is for Mother to file a petition for modification of the current custody order. Thereafter, the trial court can develop an up-to-date record detailing the ease, or difficulty, of travel to Pennsylvania in light of Mother's new work schedule.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/02/2025